WILLIAM B. SHIELDS AND OTHERS, APPELLANTS, *v.* ROBERT R. BARROW.

A vendor sold an estate in Louisiana for a large sum of money, and received payment, from time to time, for nearly one half of the amount. Afterwards, he agreed to take back the property, upon the payment of an additional sum of money, which was secured to him by the promissory notes of six individuals, four of whom lived in Louisiana, and two in Mississippi.

Becoming dissatisfied with this arrangement, the vendor filed a bill in the circuit court of the United States for Louisiana, against the two citizens of Mississippi, to set aside the agreement as having been improperly procured, and to restore him to his rights under the original sale.

All the six persons with whom the second arrangement was made, were indorsers upon the notes originally given by the vendee for the purchase-money, under the sale.

The four parties to the compromise, who resided in Louisiana, not being suable in the circuit court of that State, and their presence, as defendants, being necessary, the court could not rescind the contract as to two, and allow it to stand as to the other four. Consequently, it could not pass a decree, as prayed.

Neither the act of congress of 1839, (5 Stat. at Large, 321; § 1,) nor the 47th rule for the equity practice of the circuit courts, enables a circuit court to make a decree in equity, in the absence of an indispensable party, whose rights must necessarily be affected by such decree.

The cases upon this point, the statute, and the rule examined.

The bill should have been dismissed.

The two Mississippi defendants answered.

The bill, insisted that the compromise was made in good faith, and one of them filed a cross-bill against the vendor to compel him to carry it out.

This cross-bill was also defective, as to parties, the other sureties and the vendee having an interest in the subject, so that, without their presence, no decree could be made.

The vendor then filed a petition, by way of amended bill, stating his willingness to carry out the compromise upon certain conditions, which he prayed the court to enforce.

This was irregular. The rules about amendments, examined.

The court then passed an order, that unless the two Mississippi defendants should, before a day named, file a cross-bill, and make all the Louisiana parties defendants, the vendor might proceed upon his prayer to rescind the compromise, as far as the two Mississippi parties were concerned.

This was entirely irregular. Parties cannot be forced into court in this way; nor can new parties be brought into a cause by a cross-bill.

The mode considered of making new parties, when necessary.

The original and cross-bills must be ordered to be dismissed.

This was an appeal from the circuit court of the United States for the eastern district of Louisiana.

The history of the case is given in the opinion of the court.

It was argued by *Mr. Benjamin*, for the appellants, and by *Mr. Janin*, for the appellee.

*Mr. Benjamin* traced the case throughout all its complications, and then made the following points: —

1. The first question which will arrest the attention of the court, on the face of this record, is that of jurisdiction.

The complainant entered into a contract on the 9th November, 1842, which in its opening clause is stated to be tri-partite. The parties are, 1st, the complainant, a citizen of Louisiana. 2d, Thomas R. Shields, a citizen of Louisiana. 3d, Six individuals, indorsers for Shields, four of whom are citizens of Louisiana, and two of Mississippi.

This contract was made to annul a sale of a plantation in Louisiana, made by the first party to the second.

In a few weeks after the date of the contract, the complainant abandoning the common domicile of himself, his purchaser, and two thirds of the indorsers, declining the aid of the state tribunals of his own State, appeals to the federal court in New Orleans, to set aside his contract, then changes his demand into a suit to enforce it, and ends by obtaining a decree against his fellow citizens of Louisiana, for a large sum of money.

On what ground is the jurisdiction of the circuit court of the United States, to determine a controversy between citizens of Louisiana, to be maintained?

The only authority cited by complainant's counsel, is Story's Eq. Pl. § 392, and authorities there cited.

This authority is not at all in point. It only refers to a question of pleading in equity, relating to cross-bills, but does not touch the question of jurisdiction. The cross-bill may unquestionably be filed to determine questions arising between the defendants, so as to enable the court to determine the whole matter in controversy. But in the present case, no relief was prayed by the cross-bill against co-defendants, but on the contrary a decree was prayed for against the original complainants; and in the decree itself, no notice whatever is taken of the cross-bill; but the court confines itself to deciding the claims of the

original complainant against the original defendants, and the defendants in the cross-bill.

The device used in this case is perfectly transparent, and if successful, converts the federal courts into courts of unlimited jurisdiction, regardless of the citizenship of parties.

It requires no argument to show that the original bill could not possibly be sustained for want of proper parties. A bill to set aside an agreement for cancelling the sale of property, could not be entertained without the presence of the two parties to the sale, and agreement to cancel. But the court was without jurisdiction between these two parties, who were both citizens of Louisiana, and the bill should have been dismissed on its face. Instead of this, the defendants, citizens of Mississippi, having a common interest with these citizens of Louisiana, were forced, in spite of their protest, and under duress of the process of the court, to file a bill against their co-defendants, not for their own benefit, but in order to help the complainant to get a judgment against themselves, and against the co-defendants.

This court has repeatedly had occasion to determine that, where necessary parties to bills could not be brought into the federal courts, by reason of the constitutional limitation on their jurisdiction, the suit must be dismissed. The jurisprudence on this point has never varied, and the decisions are numerous. Where parties are merely formal, the court will dispense with their presence, but will never assume jurisdiction over them. Russell v. Clark's Executors, 7 Cranch, 69; Greenleaf v. Queen, 1 Pet. 148: Wormly v. Wormly, 8 Wheat. 421; Carneal v. Banks, 10 Ib. 181; Harding v. Handy, 11 Ib. 126; Mallon v. Hinde, 12 Ib. 193; Vattier v. Hinde, 7 Pet. 250; Dunn v. Clark, 8 Ib. 3.

The act of congress of 28th February, 1839, so far from authorizing such proceedings as were had in this suit, expressly contemplates the case where parties in interest cannot properly be brought before the court; and provides, that " the judgment or decree shall not conclude or prejudice such parties."

The plea to the jurisdiction ought, therefore, to have been sustained, as filed by those defendants who were citizens of Louisiana.

2. The court, being without jurisdiction as to Thomas R. Shields, who purchased the land, cannot decree, as against him, either for the rescission or specific performance of the contract of November 9, 1842. The bill, therefore, must be dismissed, because he is an indispensable party to any cause brought for either of those purposes. This proposition is too clear to require argument or authority.

3. There was error in permitting the complainant to bring an

entirely new and different suit against the defendant, under pretext of amending his bill. The original bill was, to set aside a contract. The amendment prayed a specific performance of the same contract. This was not an amendment, nor a supplemental bill, but a new suit.

The allegation in the original bill, brought on the 19th December, 1842, set forth that complainant feared that defendants would refuse to execute their contract of 9th November, 1842, and prayed to have it rescinded. The defendants, by their answer, in March, 1843, denied any intention to violate the contract, and expressed their intention of executing it. This judicial confession of their liability to perform its terms estopped them from any contestation of its validity, and should have sufficed to satisfy complainant; who, however, seemed determined to have a litigation. Although willing to abandon his claim for a rescission of the contract, instead of discontinuing his suit, he engrafted in it an inconsistent demand, by what he calls an amendment.

This is contrary to all the rules of pleading in chancery. Story's Eq. Pl. 332, *et seq.*; Mitford's Ch. Pl. 385.

So where the original bill prayed that a bond might be delivered up to be cancelled, an amendment not allowed praying an account of what was due on the bond. Cresy *v.* Beavan, 13 Sim. 354.

4. The amended bill should have been dismissed, as disclosing no ground for equitable relief. The demurrer should have been sustained.

This amended bill sets forth no ground for the interposition of a court of equity; alleges no refusal, by defendants, to perform their contract; and prays for the payment of a sum of money due on promissory notes. This payment could have been obtained by a suit at law. In relation to the claim for a formal conveyance of the property, contained in the amended bill, it is clear that the defendants, Victoire Shields and William Bisland, could not be condemned to make a conveyance of title standing in the name of Thomas R. Shields. The amended bill was, therefore, nothing but a naked demand, in law, for the payment of a debt.

5. The only demands set up in the record against Elis, Guion, and Winder, are contained in the cross-bill, filed at page 54 of record. These defendants filed a plea to the jurisdiction of the court; and set up, in defence, the absence of any averment in the cross-bill, showing any cause of action against them. A reference to the cross-bill will show that, in point of fact, no complaint was made against them; and in no part of the record is there any demand, by Barrow, for a decree against

them.    There is a judgment against these parties, that they pay a large sum of money to Barrow; although the pleadings disclose no prayer for such a decree, in either the original or cross-bill.

It would be an idle task to pursue any further the examination of proceedings, so completely at war with all the rules of law, and all the principles which guide courts of justice in the discharge of their duties.    The investigation is felt to be profitless ; for the want of jurisdiction in the court below, over parties in whose absence no decree could be pronounced, must, of necessity, cause the reversal of the decree and dismissal of the suit.

*Mr. Janin* replied to these points, as follows : —

The counsel for the appellants makes the following points of law :

1. That the original bill ought to have been dismissed, because Thomas R. Shields, the former proprietor of the plantation which was retroceded to the complainant, is a citizen of Louisiana, and could, therefore, not be made a party to that bill.

It is contended that, in the absence of Thomas R. Shields, the rescission of the retrocession to Barrow could not be decreed.

This is precisely the difficulty which is removed by the act of congress of February 28, 1839, the 1st section of which is in the following words : —

" That where, in any suit at law or in equity, commenced in any court of the United States, there shall be several defendants, one or more of whom shall not be inhabitants of, or found within the district where the suit is brought, or shall not voluntarily appear thereto, it shall be lawful for the court to entertain jurisdiction, and proceed to the trial and adjudication of such suit between the parties who may be properly before it; but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process, or not voluntarily appearing to answer ; and the nonjoinder of parties who are not so inhabitants, or found within the district, shall constitute no matter of abatement, or other objection to said suit."

All the authorities quoted by the appellants are anterior to that act.

If there was any thing in this point, it is too late to take advantage of it now.    The defendants filed an answer to the bill, then a cross-bill, and afterwards only a demurrer, which does not even name the parties on whose behalf it was filed.

2. The court had no jurisdiction over those of the defendants who are citizens of Louisiana.

This point concedes, at last, the jurisdiction of the court over three of the defendants; namely, William Bisland, Victoire Shields, and William B. Shields, who are citizens of Mississippi.

But the court had, undoubtedly, jurisdiction to decide the cross-bill, filed by William Bisland and Victoire Shields, citizens of Mississippi, against Thomas R. Shields, George S. Guion, Van P. Winder, and Richard G. Ellis, citizens of Louisiana. These cross-bills demanded a specific performance of the contract of November 9, 1842; and that, and nothing else, was decreed by the court.

Can it be asserted that a court of equity, having that contract and all the parties to it once before it, would decree its specific performance so far only as it imposes obligations upon the complainant, and not in all its parts? A party to an indivisible contract must fulfil his contract, if he claim specific performance; 16 Pet. 169. The original and the cross-bill are one cause; 3 Daniels, Ch. Pr. 1743.

Nor did the circuit court err, in making the order of April 24, 1844, directing the filing of a cross-bill by William Bisland and Mrs. Shields. In the Mechanics' Bank of Alexandria *v.* Louisa and Maria Seton, 1 Pet. 303, this court held, that "the general rule, as to parties, undoubtedly is, that when a bill is brought for relief, all persons materially interested in the subject of the suit ought to be made parties, either as plaintiffs or defendants, in order to prevent a multiplicity of suits; and that there may be a complete and final decree among all the parties interested. But this is a rule established for the convenient administration of justice, and is subject to many exceptions, and is more or less subject to the discretion of the court, and ought to be restricted to parties whose interest is involved in the issue, and be affected by the decree." Field *v.* Schieffelin, 7 Johns. Ch. R. 250; Story's Eq. Pl. § 393.

3. It is finally said that the complainant should not have been permitted to amend his bill, by joining the plaintiff in his cross-bill, in his demand for the specific performance of the contract of November 9, 1842.

A cross-bill is a defence. How can it be pretended that a plaintiff should not be permitted to admit, in his answer to a cross-bill, that he consents to the claim of the defendant, and to pray that the specific performance, insisted on by the defendant, may be ordered by the court, with such directions as the true nature of the contract requires? This is what Barrow said, in his answer to the cross-bill. He stated the same thing in his

petition.    That petition may have been, and probably was, superfluous ; but it was not that petition, but Bisland's answer and cross-bill, which changed the issue, by averring his readiness to comply with the contract of November 9, 1842.    Nay, if Barrow had been entirely silent, the specific performance of that contract would. have been ordered under the cross-bill, in the absence of any evidence justifying its rescission.

These proceedings were not only conformable to practice, but imperiously dictated by circumstances, and the only ones which could be had.    We shall prove this, and conclude this brief with some remarks showing the true position of the parties.

When the contract of November 9, 1842, was made, the complainant was the holder of the notes of Thomas R. Shields, to the amount of $119,956.35, the whole of which were indorsed by William Bisland, the most responsible of the defendants. Of these notes, $64,000 were then overdue, and. Barrow had brought suits on them against Bisland.    By the act of November 9, 1842, these notes were to be given up by Barrow, and the two suits against Bisland discontinued.    Thomas R. Shields was to return the property, and to be released from all further liability ; and Barrow was to receive, besides, $32,000, of which Bisland was to contribute $10,000.    Bisland was, moreover, Thomas R. Shields's judgment creditor, in the sum of $47,374.35. Bisland, who might, perhaps, have been able to pay the $10,000 without inconvenience, might have been ruined by a judgment of $119,958.25, with ten per cent. interest, during the extraordinary depreciation of property and prostration of credit then existing in Louisiana.    He was, therefore, greatly interested in securing the specific performance of the act of November 9, 1842, which afforded greater relief to him than to any other party.

And when, by his answer and cross-bill, Bisland avowed his willingness to abide by that act, Barrow took him by his word, and in compliance with Bisland's prayer, and without waiting for an order of court, at once dismissed the two suits against him, and deposited in court the notes of Shields, amounting to $119,958.38.    It must, also, be observed, that Bisland had obtained an injunction, restraining Barrow from the prosecution of those suits, and from parting with those notes.    On the other hand, the notes, amounting to $32,000, at one and two years, which Barrow was to receive under the contract of November 9, 1842, were to remain deposited in the hands of Leufroy Barras, the parish judge and *ex officio* notary public, before whom that act was passed, until R. R. Barrow should have acquired a title to the property, given up the notes, and released the parties to the act.    This title Thomas R. Shields

perseveringly and perversely refused to execute, and the aid of the court had to be invoked for it. During the pendency of the suit, Barrow could do no better than to deposit the original notes in court, and discontinue the suits against Bisland. The defendants had flattered themselves that the notes for $32,000 would remain in Terrebonne until after maturity, and without being presented for payment at the Bank of Louisiana, at New Orleans, where they were made payable ; a danger which was averted only by the court ordering their removal to the clerk's office, by whose agency they were presented and protested. This was done in opposition to the unreasonable objections of the defendants. An application of the complainant, for the delivery of these notes, was refused by the court, at the instance of the defendants. If he had had possession of these notes, he could have instituted suits on them at law, against the parties thereto. From this he was prevented, by those parties themselves. He was hindered from suing on the original notes, by the injunction of Bisland. With what good grace, with what appearance of equity, do those parties now complain that he did not sue them at law, when they themselves industriously kept him tied up in chancery ?

And what, after all, do the appellants contend for, in their elaborate brief ? The judgment condemns them, in unequal portions, to pay $32,000, with interest. Of this principal sum, $26,500 are due by the three citizens of Mississippi, who are avowedly properly made parties to the suit : namely, by Mrs. Victoire Shields and William B. Shields, $9,333.33⅓ ; and by William Bisland, for himself, $10,000, and as indorser for R. G. Ellis, $6,966.66⅔. And here we find William Bisland making common cause with the other defendants, when it is clearly his interest that they should be made to abide by the contract which relieves him from his indorsement of $119,918.38, no more than doubled by interest.

Mr. Justice CURTIS delivered the opinion of the court.

To make intelligible the questions decided in this case, an outline of some part of its complicated proceedings must be given. They were begun by a bill in equity, filed in the circuit court of the United States for the eastern district of Louisiana, on the 19th of December, 1842, by Robert R. Barrow, a citizen of the State of Louisiana, against Mrs. Victoire Shields, and by amendment against William Bisland, citizens of the State of Mississippi. The bill stated, that in July, 1836, the complainant sold certain plantations and slaves in Louisiana, to one Thomas R. Shields, who was a citizen of Louisiana, for the sum

12*

of $227,000, payable by instalments, the last of which would fall due in March, 1844.

That negotiable paper was given for the consideration money, and from time to time $107,000 was paid. That the residue of the notes being unpaid, and some of them protested for non-payment, a judgment was obtained against Thomas R. Shields, the purchaser, for a part of the purchase-money, and proceedings instituted by attachment against Thomas R. Shields and William Bisland, one of his indorsers, for other parts of the purchase-money then due and unpaid. In this condition of things, an agreement of compromise and settlement was. made, on the 9th day of November, 1842, between the complainant, of the first part, Thomas R. Shields, the purchaser, of the second part, and the six indorsers on the notes given by Thomas R. Shields, of the third part. Of these six indorsers, Mrs. Shields and Bisland, the defendants, were two. By this new contract the complainant was to receive back the property sold, retain the $107,000 already paid, and the six indorsers executed their notes, payable to the complainant, amounting to thirty-two thousand dollars, in the manner and proportions following, as stated in the bill : —

" The said William Bisland pays ten thousand dollars, in two equal instalments, the first in March next, and the other in March following, for which sum the said William Bisland made his two promissory notes, indorsed by John P. Watson, and payable at the office of the Louisiana Bank in New Orleans. The said R. G. Ellis $6,966.66, on two notes indorsed by William Bisland. The said George S. Guion, $2,750, on two notes indorsed by Van P. Winder. The said Van P. Winder, $2,750, on two notes indorsed by George S. Guion. The said William B. Shields, $4,766,66, on two notes indorsed by Mrs. Victoire Shields; and finally, Mrs. Victoire Shields the same amount on two notes payable as aforesaid at the office of the Louisiana Bank, in New Orleans."

The complainant was to release the purchaser, Thomas R. Shields, and his indorsers, from all their liabilities then outstanding, and was to dismiss the attachment suit then pending against Thomas R. Shields and Bisland.

The bill further alleges, that though the notes were given, and the complainant went into possession under the agreement of compromise, the agreement ought to be rescinded, and the complainant restored to his original rights under the contract of sale; and it alleges various reasons therefor, which it is not necessary in this connection to state. It concludes with a prayer that the act of compromise may be declared to have been improperly procured, and may be annulled and set aside,

Shields et al. *v.* Barrow.

and that the defendants may be decreed to pay such of the notes, bearing their indorsement, as may fall due during the progress of the suit, and for general relief.

Such being the scope of this bill and its parties, it is perfectly clear that the circuit court of the United States for Louisiana, could not make any decree thereon. The contract of compromise was one entire subject, and from its nature could not be rescinded, so far as respected two of the parties to it, and allowed to stand as to the others. Thomas R. Shields, the principal, and four out of six of his indorsers, being citizens of Louisiana, could not be made defendants in this suit; yet each of them was an indispensable party to a bill for the rescission of the contract. Neither the act of congress of February 28, 1839, (5 Stat. at Large, 321, § 1,) nor the 47th rule for the equity practice of the circuit courts of the United States, enables a circuit court to make a decree in equity, in the absence of an indispensable party, whose rights must necessarily be affected by such decree.

In Russell *v.* Clarke's Executors, 7 Cranch, 98, this court said: " The incapacity imposed on the circuit court to proceed against any person residing within the United States, but not within the district for which the court may be holden, would certainly justify them in dispensing with parties merely formal. Perhaps in cases where the real merits of the cause may be determined without essentially affecting the interests of absent persons, it may be the duty of the court to decree, as between the parties before them. But, in this case, the assignees of Robert Murray and Co. are so essential to the merits of the question, and may be so much affected by the decree, that the court cannot proceed to a final decision of the cause till they are parties."

The court here points out three classes of parties to a bill in equity. They are: 1. Formal parties. 2. Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.

A bill to rescind a contract affords an example of this kind. For, if only a part of those interested in the contract are before the court, a decree of rescission must either destroy the rights of those who are absent, or leave the contract in full force as respects them; while it is set aside, and the contracting parties restored to their former condition, as to the others. We do not say that no case can arise in which this may be done; but it must be a case in which the rights of those before the court are completely separable from the rights of those absent, otherwise the latter are indispensable parties.

Now it will be perceived, that in Russell v. Clarke's Executors, this court, after considering the embarrassments which attend the exercise of the equity jurisdiction of the circuit courts of the United States, advanced as far as this: They declared that formal parties may be dispensed with when they cannot be reached; that persons having rights which must be affected by a decree, cannot be dispensed with; and they express a doubt concerning the other class of parties. This doubt is solved in favor of the jurisdiction in subsequent cases, but without infringing upon what was held in Russell v. Clarke's Executors, concerning the incapacity of the court to give relief, when that relief necessarily involves the rights of absent persons. As to formal or unnecessary parties, see Wormley v. Wormley, 8 Wheat. 451; Carneal v. Banks, 10 Ib. 188; Vattier v. Hinde, 7 Pet. 266. As to parties having a substantial interest, but not so connected with the controversy that their joinder is indispensable, see Cameron v. M'Roberts, 3 Wheat. 591; Osborn v. The Bank of the United States, 9 Ib. 738; Harding v. Handy, 11 Ib. 132. As to parties having an interest which is inseparable from the interests of those before the court, and who are, therefore, indispensable parties, see Cameron v. M'Roberts, 2 Ib. 571; Mallow v. Hinde, 12 Ib. 197.

In Cameron v. M'Roberts, where the citizenship of the other defendants than Cameron did not appear on the record, this court certified: "If a joint interest vested in Cameron and the other defendants, the court had no jurisdiction over the cause. If a distinct interest vested in Cameron, so that substantial justice (so far as he was interested) could be done without affecting the other defendants, the jurisdiction of the court might be exercised as to him alone." And the grounds of this distinction are explained in Mallow v. Hinde, 12 Wheat. 196, 198.

Such was the state of the laws on this subject when the act of congress of February 28, 1839, (5 Stat. at Large, 321,) was passed, and the 47th rule, for the equity practice of the circuit court of the United States, was made by this court.

The first section of that statute enacts: That when, in any

suit, at law or in equity, commenced in any court of the United States, there shall be several defendants, any one or more of whom shall not be inhabitants of, or found within, the district where the suit is brought, or shall not voluntarily appear thereto, it shall be lawful for the court to entertain jurisdiction, and proceed to the trial and adjudication of such suit between the parties who may be properly before it; but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process, or not voluntarily appearing to answer; and the nonjoinder of parties who are not so inhabitants, or found within the district, shall constitute no matter of abatement or other objection to said suit."

This act relates solely to the nonjoinder of persons who are not within the reach of the process of the court. It does not affect any case where persons, having an interest, are not joined because their citizenship is such that their joinder would defeat the jurisdiction; and, so far as it touches suits in equity, we understand it to be no more than a legislative affirmance of the rule previously established by the cases of Cameron *v.* M'Roberts, 3 Wheat. 591; Osborn *v.* The Bank of the United States, 9 Ib. 738; and Harding *v.* Handy, 11 Ib. 132. For this court had already there decided, that the nonjoinder of a party, who could not be served with process, would not defeat the jurisdiction. The act says it shall be lawful for the court to entertain jurisdiction; but, as is observed by this court, in Mallow *v.* Hinde, 12 Wheat. 198, when speaking of a case where an indispensable party was not before the court, "we do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to all courts of equity, whatever may be their structure as to jurisdiction; we put it on the ground that no court can adjudicate directly upon a person's right, without the party being either actually or constructively before the court."

So that, while this act removed any difficulty as to jurisdiction, between competent parties, regularly served with process, it does not attempt to displace that principle of jurisprudence on which the court rested the case last mentioned. And the 47th rule is only a declaration, for the government of practitioners and courts, of the effect of this act of congress, and of the previous decisions of the court, on the subject of that rule. Hagan. *v.* Walker, 14 How. 36. It remains true, notwithstanding the act of congress and the 47th rule, that a circuit court can make no decree affecting the rights of an absent person, and can make no decree between the parties before it, which so far involves or depends upon the rights of an absent person, that complete and final justice cannot be done between the parties to the suit with-

out affecting those rights. To use the language of this court, in Elmendorf v. Taylor, 10 Wheat. 167: "If the case may be completely decided, as between the litigant parties, the circumstance that an interest exists in some other person, whom the process of the court cannot reach, — as if such party be a resident of another State, — ought not to prevent a decree upon its merits." But if the case cannot be thus completely decided, the court should make no decree.

We have thought it proper to make these observations upon the effect of the act of congress and of the 47th rule of this court, because they seem to have been misunderstood, and misapplied in this case: it being clear that the circuit court could make no decree, as between the parties originally before it, so as to do complete and final justice between them without affecting the rights of absent persons, and that the original bill ought to have been dismissed.

But, unfortunately, this course was not taken. The two defendants, Mrs. Shields and Bisland, answered, denied the allegations of fraud, and insisted that, so far as they were concerned, the compromise was made in good faith, and they were ready to perform their parts of it, according to their respective stipulations.

On the same day that Bisland filed his answer, he filed also a cross-bill against Barrow, praying for a specific performance of the contract of compromise.

But this bill also was fatally defective, as respects parties. Thomas R. Shields, and his other five indorsers, had such a direct and immediate interest in the contract of compromise, and that interest was so entire and indivisible, that, without their presence, no decree on the subject could be made. In Morgan's Heirs v. Morgan, 2 Wheat. 290, a bill was brought by the heirs of a deceased vendor, to compel the specific performance of a contract to purchase lands. It was objected that the deceased had a child who was not made a party. Chief Justice Marshall said: "It is unquestionable that all the coheirs of the deceased ought to be parties to this suit, either plaintiff or defendant, and a specific performance ought not to be decreed until they shall be all before the court."

The next step in the pleadings was, that Barrow filed what he calls a petition, in which he recites summarily what had previously been done in the cause, and declares himself willing to have the agreement of compromise specifically performed, and prays for leave to amend his bill, by making Thomas R. Shields a party, alleging he had become a citizen of Mississippi, and by inserting the following words: —

"But if this honorable court should be of opinion, that the

said agreement of November 9, 1842, is valid, and should not be set aside; and if the said defendant shall acknowledge its validity and binding force, then the orator prays that its specific performance may be decreed, according to its true purport and tenor, as herein above explained; and he offers to do and perform on his part all the acts which, by said agreement, he is bound to perform; and he prays that said defendants may be decreed to pay to him the value of the mule, negro, clothing, and flat-boats, which were taken away from the said plantation as aforesaid; that they be decreed to relieve the said Liza, and the other above-mentioned property, from the judicial mortgages mentioned in this bill, and from the tacit mortgage of the minor children of the said Thomas R. Shields; that the said Thomas R. Shields, when made a party to this suit, both in his individual capacity and as tutor of his aforesaid minor children, may be ordered to execute a proper and legal reconveyance to your orator, of the above-described property, or that any other order may be made which, to this honorable court, may appear meet and fit, for the purpose of again vesting in the orator a good and valid title to the aforesaid property; that the notes described in said act of November 9, 1842, and amounting to $32,000, may be surrendered to your orator; that the defendants may be decreed to pay to your orator the amount of such of the said last-mentioned notes as may have been drawn by them, and also such of said notes as may be indorsed by them, and which may have been protested, and of the protest of which they may have been duly notified before the final decree of this honorable court, the whole with interest from the day of protest; and that said defendants may furthermore be decreed to pay the current expenses of the said plantation during the year anterior to said November 9, 1842, and to refund to your orator any amount and expenses which he may have been, or may yet be, compelled to pay on account of privileged claims incumbering said plantation on the day of said act."

The court allowed the above amendment. So that the bill thereafter presented not only two aspects, but two diametrically opposite prayers for relief, resting upon necessarily inconsistent cases; the one being that the court would declare the contract rescinded, for imposition and other causes, and the other, that the court would declare it so free from all exception as to be entitled to its aid by a decree for specific performance.

Whether this amendment be considered as leaving the bill in this condition, or as amounting to an abandonment of the original bill for a rescission of the contract, and the substitution of a new bill for a specific performance, it was equally objectionable.

A bill may be originally framed with a double aspect, or may be so amended as to be of that character. But the alternative case stated must be the foundation for precisely the same relief; and it would produce inextricable confusion if the plaintiff were allowed to do what was attempted here. Story's Eq: Pl. 212, 213; Welford's Eq. Pl. 88; Edwards *v.* Edwards, Jacob's R. 335.

Nor is a complainant at liberty to abandon the entire case made by his bill, and make a new and different case by way of amendment. We apprehend that the true rule on this subject is laid down by the vice-chancellor, in Verplanck *v.* The Mercantile Ins. Co. 1 Edwards Ch. R. 46. Under the privilege of amending, a party is not to be permitted to make a new bill. Amendments can only be allowed when the bill is found defective in proper parties, in its prayer for relief, or in the omission or mistake of some fact or circumstance connected with the substance of the case, but not forming the substance itself, or for putting in issue new matter to meet allegations in the answer. See also the authorities there referred to, and Story's Eq. Pl. 884.

We think sound reasons can be given for not allowing the rules for the practice of the circuit courts respecting amendments, to be extended beyond this; though doubtless much liberality should be shown in acting within it, taking care always to protect the rights of the opposite party. See Mavor *v.* Dry, 2 Sim. and Stu. 113.

To strike out the entire substance and prayer of a bill, and insert a new case by way of amendment, leaves the record unnecessarily incumbered with the original proceedings, increases expenses, and complicates the suit; it is far better to require the complainant to begin anew.

To insert a wholly different case is not properly an amendment, and should not be considered within the rules on that subject.

After this change had been made in the original bill, and Barrow had answered the cross-bill of Bisland, the next step taken in the cause, respecting the pleadings and parties, was the entry of the following order:—

" The motion of the complainant for the delivery of the notes of George S. Guion and Van P. Winder, which have been, by order of the court, delivered into the court, to abide its further order, came on to be heard; and having been fully argued, and it appearing to the court that all the parties to the second contract set up in the complainant's bill and in the cross-bill of the defendant, Bisland, are not before the court; and it also appearing to the court that the said defendants, Shields and Bisland, are citizens of the State of Mississippi, and that all the

Shields et al. *v.* Barrow.

other parties interested in the execution of the said second con-
tract, are citizens of the State of Louisiana, it is therefore ordered,
that unless the said Shields and Bisland do, on or before the
first Monday in August next, file their cross-bill, setting up and
praying a specific execution of said contract, and make all the
parties to the second contract, set up in the complainant's bill
and residing in Louisiana, defendants, that the complainant,
Barrow, shall be at liberty to proceed upon his bill of complaint
for a specific execution of the original contract between the
parties, and for the rescission of the said second contract against
such of the parties residing in the State of Mississippi as may
fail to comply with this order."

The validity of this order cannot be maintained, and nothing
done in consequence of it can be allowed any effect in this
court.

It is apparent that, if it were in the power of a circuit court
of the United States to make and enforce orders like this, both
the article of the constitution respecting the judicial power, and
the act of congress conferring jurisdiction on the circuit courts,
would be practically disregarded in a most important particular.
For in all suits in equity it would only be necessary that a citizen
of one State should be found on one side, and a citizen of
another State on the other, to enable the court to force into the
cause all other persons, either citizens or aliens.   No such power
exists; and it is only necessary to consider the nature of a cross-
bill, to see that it cannot be made an instrument for any such
end.   " A cross-bill, *ex vi terminorum*, implies a bill brought by
a defendant against the plaintiff in the same suit, or against
other defendants in the same suit, or against both, touching the
matters in question in the original bill."   Story's Eq. Pl. § 389;
3 Dan Ch. Pr. 1742.

New parties cannot be introduced into a cause by a cross-bill.
If the plaintiff desires to make new parties, he amends his
bill, and makes them.   If the interest of the defendant requires
their presence, he takes the objection of nonjoinder, and the
complainant is forced to amend, or his bill is dismissed.   If, at
the hearing, the court finds that an indispensable party is not
on the record, it refuses to proceed.   These remedies cover the
whole subject, and a cross-bill to make new parties is not only
improper and irregular, but wholly unnecessary.

When the defendants, Mrs. Shields and Bisland, had complied
with this order of the court, and filed their cross-bill, as it was
called, against the other indorsers and Thomas R. Shields, and
they had come in, as they did, what was their relation to the
cause?   They surely were not plaintiffs in it.   If they were
defendants the court had not jurisdiction, for they, as well as

the complainant, were citizens of Louisiana. In truth, they were not parties to the original bill; they were merely defendants to the cross-bill. They had no right to answer the original bill, or make defence against it, and of course no decree could be made against them upon that bill.

We do not find it necessary to pursue further an examination in detail, of the complicated maze of pleas, demurrers, answers, amendments, and interlocutory orders, which followed the filing of this, so called, cross-bill. It is enough to say that the defendants to it were never lawfully before the court; that the court never obtained jurisdiction over those of the parties who were citizens of the State of Louisiana, and amongst them was Thomas R. Shields, who, though made a party to the original bill by amendment, as a citizen of Mississippi, pleaded that he was a citizen of Louisiana, and was thereupon stricken out of the original bill, and was only a defendant to the cross-bill; that it never had lawfully before it such parties as were indispensable to a decree for the specific performance of the contract of compromise, or for the rescission thereof; and lastly, that when it proceeded finally to make a decree condemning certain of the defendants, who were indorsers for Thomas R. Shields, to pay the notes given on the compromise, it gave relief, for which there was a plain, adequate, and complete remedy at law, and which was wholly aside from the prayer of the bill for a specific execution of the contract of compromise, which was fully executed in this particular when the notes were given and deposited in the hands of the notary.

This court regrets that a litigation, which has now lasted upwards of thirteen years, should have proved wholly fruitless; but it is under the necessity of reversing the decree of the circuit court, ordering the cause to be remanded, and the original and cross-bills dismissed.

### *Order.*

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the eastern district of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court that the decree of the said circuit court in this cause be and the same is hereby reversed with costs, and that this cause be and the same is hereby remanded to the said circuit court, with directions to that court to dismiss the original and cross-bills in this cause.