Mr; Justice Wylie
delivered the opinion of the court:
On the 1st of September, 1868, the defendant Grant was *43 the owner of all of square number 760 in this city, having purchased said square from Lewis Ladomus and William P. Ellison, and executed two several deeds of trust on the same to secure the payment of the purchase-money, amounting to $47,287.14. Subsequently he subdivided the square into lots numbered from 1 to 30 inclusive. Having paid off all the debt for the purchase-money except $11,658.14, the trustees, with the consent of the late owner, released the lien from all the lots except those numbered 5, 6, and 13. The balance of the claim was then assigned, for value, to the complainant in this cause.
On the 9th of September, 1870, Grant placed another deed of trust on lots 5, 6, 9, 10, 11, 16, and 17, to secure a debt of $10,000 to S. Ledyard Phelps. From this lien lots 9,10, and 11 were subsequently released, and the claim assigned to the complainant.
On the 27th May, 1871, he placed another deed of trust on lots 1, 2, 3, 4, 8, 9, 10,11, 12, and 14 to secure ten of his promissory notes given to the complainant for $10,000 each.
On the 26th of August, 1871, he placed another deed of trust on lots 1, 3, 4, 5, 6, 8, 9, 10, 11, 12, 14, 16, and 18 to secure four promissory notes to Winfield S. Fletcher for $10,000 each. These notes have also been assigned to the complainant.
On the 1st of January, 1872, he placed twelve other sevei’al deeds of trust on lots 1, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, and 14 to secure on each lot respectively different promissory notes, amounting in the aggregate to $81,000.
All of these notes bear interest at the rate of ten per cent, per annum, payable semi-annually, and are overdue.
These deeds of trust all omit to provide for the length of notice to be given in case of sale, and for the place of sale.
On the 24th of April, 1873, Grant placed another deed of trust on lots 1, 3, 4, 5, 6, 8, 9, 10, 11, 12, and 14 to secure another note given to the complainant for $60,000, also bearing interest at the rate of ten per cent, per annum, payable semi-annually.
*44 Tims far, as the bill alleges, all the debts so secured upon the property are in the hands of the complainant in this suit.
A number of subsequent purchasers from Grant, besides several judgment creditors, have been made parties defendant.
The object of the suit — the alleged debts being all overdue — is to have the several pieces of property covered by any of these numerous deeds of trust now held for the use of the complainant sold under decree of the court for the payment of the debts.
A number of dwelling-houses had been erected on the property by Grant, one or two only of which were completed, and others at different stages towards completion. One of those completed was occupied by Grant himself.
After the filing of the bill and due notice to Grant, a receiver was appointed, with his consent, to take possession of the houses, excepting, however, the one which Grant himself occupied and one other, the rents of which he was permitted to collect, with authority to rent them out and apply the proceeds towards their completion, and further to mortgage them, if found practicable, to raise money to be so applied. "We find no fault with the action of the court below in respect to these orders, but think they were proper under the circumstances.
Objection has been made to the jurisdiction of the court to decree a sale in this case, on the ground that by the contract of the parties the sales were to be made by the trustees named in the several deeds of trust, and that in this respect deeds of trust differ from mortgages.
We think, also, that this objection is untenable. In this District that jurisdiction has always been exercised by the court, and never before, that have we known, has it been disputed. Innumerable titles rest upon it, and unexampled distress and confusion would follow a contrary decision. In Willard’s Equity Jurisprudence, 451, the author says: “A summary mode of foreclosing mortgages at law by advertisement and sale is provided by statute for those cases where the mortgage contains a power to the mortgagee or any other *45 pei’son to sell the mortgaged premises upon default being made in any condition of the mortgage. (2 Rev. Stat. N. Y., 545.) There are many cases where this remedy cannot be applied, and there are none in which it supersedes an action in a court of equity. The latter is, therefore, with us, the most usual as well as the most effective remedy in cases of non-payment of demands secured by mortgage.” And in 4 Kent’s Commentaries, 190, 191, the author says: “In New York, and probably in other States, a sale under a power is made the subject of a statute provision; but, as the title under such a sale does not affect any mortgage or judgment creditor whose lien accrued prior to the sale, it must be rather hazardous and unsatisfactory title, and far inferior to oue under a decree in chancery, founded on a view of the rights — and which bars the rights — of all incumbrances who are brought before the court.” Here, so far from intimating a doubt as to the jurisdiction of the court of equity in such a case, the author declares that the title of the purchaser at the sale by the trustees under a power must be rather hazardous and unsatisfactory, and far inferior to one under a decree in chancery. And although the practice of providing for sales under a power in the mortgage has been growing'in England as well as in this country, Lord Eldon, in Roberts v. Bezon, considered it to be an extraordinary power of a dangerous nature, and one which was unknown in his early practice.
In 2 Cooley’s Blackstone, 159, note 15, the author of the note, speaking of mortgages with a power of sale, says that the mortgagee may file his bill in equity as in other cases.
Besides this, the present case contains many particular features which seem to render the jurisdiction of the court, absolutely indispensable in order that a fair sale should be made, and bidders should know beforehand that they could get a valid title under a decree in which the rights of every person having a claim upon the property had been ascertained and settled.
Erom the face of the bill it appears that the property in question has been subdivided into numerous lots. Some of *46 the deeds of trust are liens upon all the lots; others upon some of them only. Payments have been made on account of some of the claims, and none upon others. The aggregate-liens exceed the value of the property, and the owner is apparently insolvent. Purchasers from Grant subsequent to liens are parties to the bill, and in justice to them the securities should be marshalled. The parties in interest are numerous, and the complications of rights is so great that nothing can settle them except a decree in equity.
In Caldwell v. Taggart, 4 Peters, 201, the court says: “In reply to all these grounds of counsel for want of parties or for want of due maturation for a final hearing, it has been urged that nothing is ordered to be mortgaged or sold beside Caldwell’s own interest, whatever that may be. JBut this we conceive to be an insufficient answer. It is not enough that, a court of equity causes nothing but the interest of the proper parties to change owners. Its decrees should terminate, not instigate, litigation." Its sales should tempt men to sober investment, and not to wild speculation. Its process should act upon known and definite interests, and not upon such as admit of no medium estimation. It has the means of reducing every right to certainty and precision, and is therefore bound to employ those means in the exercise of its jurisdiction.”
The foregoing contains our view of the ease presented by the bill alone. This bill was filed on the 17th April, 1875. Receivers were appointed as to ten of the twelve houses on the 7th May, 1875, with the consent of Grant, the court allowing him to retain the possession of two of the houses. On the 6th of July, 1875, Grant filed a general demurrer to the bill. This demurrer was not argued till the 8th day of November, 1875, when it was overruled, and the defendant allowed twenty days in which to file an answer. In the meantime, on the 11th of November, a decree pro confesso was passed against all the trustees named in the several deeds of trust and some other nominal parties. On the 27th of November Grant filed his answer and cross-bill, and at the same *47 time set up the same matter’s, by way of plea, which were contained in the answer and cross-bill. On the 23d of December complainant filed its demurrer to Graut’s cross-bill.
Several dilatory motions were made between this last date and the 15th of March, 1876, upon which day an' order was made allowing the demurrer to the cross-bill, and giving the defendant Grant ten days to amend his cross-bill. On this day, also, several other motions in the case were disposed of by the court which require no special reference, and Grant appealed from the order allowing the complainant’s demurrer to his cross-bill. Of course, under our practice, no appeal could be taken in such a case; but since the present appeal has brought up the whole case with all the interlocutory orders, it is proper that we should dispose of this point also. Dy his cross-bill Grant had sought to bring into the case numerous parties who were not parties to the original bill.
In Shields v. Barron, 17 How., 130, the Supreme Court decided that parties cannot be forced into court in this way, nor can new parties be brought into a • a: by cross-bill.
We perceive no error, therefore, in the order of the court below sustaining the demurrer to the cross-bill and giving leave to amend.
The pleadings in the cause at this time consisted, therefore, of the mkjstal bill, the defendant’s demurrer to the same which hud been overruled, his auswer and cross-bill, with a plea setting up the same matters embraced by'these, and the complainant’s replication, which was not filed till this date, 15th March, 1876, and the demurrer to the cross-bill which had been allowed.
The form of the replication was that “the plaintiff hereby joins issue with the defendant, Albert Grant.” It would have been u>»re artistic had a separate replication been filed, in the usual form, both to the pleas and to the answer. We have no doubt, however, that it intended to apply to all, since the matters set up by way of plea were the same, substantially, with those of the answer.
The cause then, after about a year filled with the conten *48 tions of the parties over minor points, was brought to an issue of fact on the 15th of March, 1876, and no evidence taken on either side. On the 3d of April, 1876, and before the period for taking testimony had expired, on motion of complainant’s counsel, the court ordered a reference of the cause to the auditor, with instructions to “ state the account between the plaintiff and the defendant Grant, the amount due under the several deeds of trust referred to in the proceedings in this cause, the several incumbrances upon the real estate particularly referred to in this bill, and the priority of the respective liens.” And, in our view, the cause, as it is now before us, depends entirely upon the regularity of that order.
We are all of opinion that the order of reference to the auditor was erroneous in the condition of the cause at that time. In 3 Greenleaf’s Evidence, sec. 332, citing Lunsford v. Bonton, 1 Dev. Eq. R., 483, and Holden v. Hearn, 3 My. & K, 445, the rule is thus broadly laid down: “A. reference to the master is never made to establish, in the first instance, a fact put in issue by the pleadings, and constituting an essential element in the controversy.”
Without adopting this rule, as thus laid down, in its full extent, we are of opinion that the issue of absolute payment of all these claims set up by the defendant Grant in his answer, in his plea, and in his cross-bill, and sworn to by him, was of such a character that it ought first to have been tried by the court itself, upon testimony taken by the parties in the usual way; for if that defense were once made out, there would be no need to have an account or a marshalling of securities. But the bill must be dismissed.
It is true, however, that no such rule seems to have been applied by the Supreme Court of the United States in Field v. Holland, 6 Cr., 25, where Chief J ustice Marshall said: “A court of chancery may, with perfect propriety, refer an account to an auditor, and on the return of the report determine such questions as may be contested by the parties.” ■ The same principle was carried still further in the case of Penn *49 sylvania v. The Wheeling Bridge Co. et al., 13 How., 518, in. which case a special commissioner was appointed by the coux’t to ascex’taixx and report the facts in controversy, and the court held that his report was equivalent to the finding of a jury upon all the facts in issue between the parties. The whole case was decided upon the repoi’t of the commissioner.
It is not necessary, therefore, to examine in detail the exceptions to the auditor’s report in this case, since, for the reasons stated, the reference to the auditor and the auditor’s report must- be wholly set aside, the decree revei’sed, and the cause remanded for further pi’oceedings, to commence with the date when the issues were made up.