JUDSON, Assignee *v.* THE COURIER Co.

*(Circuit Court, S. D. New York.* February 21, 1883.)

1. BANKRUPTCY—FRAUDULENT TRANSFER—PRIMA FACIE EVIDENCE OF.

Where a transfer of property is made outside of the usual course of one's business, by one who is insolvent and who is known to be so by the parties to whom he transfers, and with whom he has confidential business relations, it will be considered as *prima facie* evidence against the parties to the transfer that a fraud upon the bankrupt act was intended, and the facts and circumstances surrounding such transfer impose upon the party to whom the transfer is made, the active duty of inquiring into the debtor's financial situation, and the number of his creditors.

2. SAME—NON-JOINDER.

All the parties to a transfer, such as the above, are necessary parties to an action brought to invalidate the transfer, without whose presence the court could not proceed to a decree.

In Bankruptcy.

*E. H. Benn,* for appellant.

*Hamilton Cole,* for respondent.

WALLACE, J. This is an appeal from a decree of the United States district court for the southern district of New York, dismissing the bill.

The complainant is the assignee of one Queen in bankruptcy, and seeks by the bill to set aside a transfer of certain menagerie property alleged to have been made to the defendant by the bankrupt and others within four months of the filing of a petition in bankruptcy by the bankrupt. The allegations of the bill are that on the third day of November, 1877, the bankrupt, being then insolvent and in contemplation of insolvency, executed a bill of sale of the property for the purpose of paying or securing an indebtedness to the defendant; that shortly prior thereto, and on the twenty-seventh day of October, 1877, the defendant and certain other creditors entered into a tripartite agreement in reference to said property, in which one Dinegar was the party of the first part, the defendant was the party of the second part, and Calvin and Cole, in behalf of themselves and certain other creditors of the bankrupt, were parties of the third part, whereby it was agreed that the title to the menagerie should vest in the defendant, divested of all liens held thereon by the other parties to the agreement, reserving to Dinegar the right to purchase the property at any time within 90 days, and providing that upon his failing to do so the defendant should sell the property and apply the proceeds to the payment of the debts of the several parties; that on the third

day of November, 1877, the bankrupt consented and agreed to all the terms of said tripartite agreement. The bill further alleges that neither Dinegar nor Calvin and Cole had any valid title to or lien upon the property, but that their title and liens were fraudulent and void as to the creditors of the bankrupt, and were known so to be to all the parties to said tripartite agreement; that the said tripartite agreement was void as against the creditors of the bankrupt, and was executed and assented to by the bankrupt when he was insolvent, and when all the parties thereto knew him to be insolvent and in contemplation of bankruptcy and insolvency, and the same was executed and accepted with the intent of giving the beneficiaries a fraudulent preference over all other creditors of the bankrupt; all of which facts were known to the parties and to the bankrupt when the same was executed. After alleging that the defendant took possession of the property under such transfer, and the filing by the bankrupt within four months of his petition in involuntary bankruptcy, the bill prays that the transfer and the tripartite agreement be set aside, all the stipulations thereof and all the title and interest of all the parties in the property be adjudged fraudulent and void, and the defendant adjudged to transfer the property to the complainant or pay the value of the same.

None of the parties to the tripartite agreement, except the defendant, have been made parties to the suit, and the bill does not contain any allegations for the purpose of excusing their non-joinder.

The proofs show that at the time the tripartite agreement was made Dinegar claimed to be the owner of the property by virtue of a bill of sale thereof executed by the bankrupt to one Howe, on the ninth day of October, 1877, and a transfer from Howe to Dinegar. The consideration of this bill of sale was $35,000, of which $25,000 was an antecedent indebtedness owing by the bankrupt to Howe. At the time of its execution, Howe and the bankrupt entered into a collateral agreement by which the latter was to be permitted to repurchase the property upon the payment of $35,000, at any time within 30 days, and was to be permitted to have possession of the property so long as Howe should so elect.

The proofs also show that, at the time the tripartite agreement was made, Calvin and Cole, the parties of the third part in the agreement, had a chattel mortgage upon the property, executed to them by the bankrupt on the fifteenth day of October, 1877, to secure an indebtedness, owing to them and several other creditors by the bankrupt, of $13,145. This mortgage was conditioned to be void upon

the payment of that sum within 60 days, and provided that the bankrupt should be permitted to retain possession of the property in the mean time, unless the mortgagees should deem themselves unsafe or unless the property should be taken on attachment or execution against the mortgagor.

The bankrupt was indebted to the defendant in about the sum of $18,000 upon a running account for printing, and immediately after the execution of the chattel mortgage to Calvin and Cole he notified the president of the defendant, in substance, that he had been compelled to give this mortgage, but he had 60 days in which to pay it and would be able to do so, and asking the defendant not to take any hostile action. The president of the defendant, however, proceeded to St. Louis, where the menagerie then was, brought suit against the bankrupt, and attached the property. In this position of affairs the tripartite agreement was entered into, all the parties apparently deeming it for their interest to waive their respective rights to the property as against each other, and influenced in part, probably, by the consideration that a large expense in maintaining the property would have to be incurred, and the defendant was willing to advance the necessary funds. Upon the execution of the agreement the defendant took possession of the property. The value of the property at that time was about $30,000.

The decree of the district court dismissing the bill, as appears from the opinion of the district judge, was reached upon the theory that the proofs did not warrant the conclusion that the defendant knew that the transfer was made in fraud of the provisions of the bankrupt act, because it was not chargeable with knowledge that there were any creditors of the bankrupt except those who were parties to the tripartite agreement. This conclusion cannot be accepted as satisfactory. Without amplification, it must be determined that inasmuch as the transfers made by the bankrupt were not made in the usual and ordinary course of his business, they were *prima facie* evidence that a fraud upon the bankrupt act was intended; and the facts and circumstances imposed upon the president of the defendant the active duty of inquiring into the debtor's financial situation. He knew that all the available property of the debtor was included in these transfers. He knew that the debts of the creditors present largely exceeded in amount the value of the debtor's property. He knew that all the creditors present occupied intimate or confidential relations with the debtor. If he had made reasonable inquiries and been informed that the posture of affairs was attributable only to the efforts

of rival creditors to obtain precedence as between themselves, and that there were no other creditors, a different case would be presented. Not having done so, the defendant is chargeable with knowledge of what its president might have ascertained.

There is, however, a fatal difficulty in the way of any decree for the complainant which does not seem to have been suggested in the district court. Dinegar, Calvin, and Cole, are indispensable parties to the controversy, without whose presence the court could not proceed to a decree. They were not only parties to the tripartite agreement, which is now assailed as fraudulent, and under which the defendant acquired the title now sought to be invalidated, but they claimed rights in the property in hostility to the bankrupt, and which authorized them to transfer the property to the defendant independently of any co-operation of the bankrupt. Assuming the tripartite agreement to be void as to the complainant because in contravention of the bankrupt act, it was good as between the defendant and Dinegar, Calvin, and Cole; and if they had title to the property the defendant acquired it, and the complainant has no interest in it. If they had valid liens upon it, the defendant acquired those liens, and should be permitted to retain them. As they are not parties, the validity of their title or liens, as between themselves and the defendant, cannot be finally determined. If it should be adjudged that their titles or liens were void as to the complainant, they would not be concluded, and could still insist, as to the defendant, that the transfer was valid, and that defendant must account for the proceeds of the property according to the tripartite agreement. Assuming that their rights would not be affected by a decree, it would deliver over the rights of the defendant and the question of its liability to these parties to a new and independent litigation. The tripartite agreement constituted the property transferred by it a trust fund for the benefit of all the parties to it. The bill seeks to reach this fund and appropriate it to the complainant without giving those who created the fund and are its equitable owners an opportunity to defend their interests. If this bill were framed to reach only the interest of the bankrupt, that interest could only be ascertained by ascertaining the interests of Dinegar, Calvin, and Cole, and as a decree would not bind them, the defendant would be turned over to a fresh controversy with them, in which a different determination might result.

In any aspect of the controversy, Dinegar, Calvin, and Cole have such an interest in the subject-matter that a decree could not be made without affecting their interests, or leaving the controversy in

such a condition that complete and final justice to the defendant will not have been done. Story, Eq. Pl. § 83; *Shields* v. *Barrow*, 17 How. 130; *Coiron* v. *Millaudon*, 19 How. 113; *Barney* v. *Baltimore City*, 6 Wall. 280; *Ribon* v. *Railroad Companies*, 16 Wall. 446; *Gray* v. *Schenck*, 4 N. Y. 460; *Vanderpool* v. *Van Valkenburgh*, 6 N. Y. 190.

The decree is reversed, without costs to either party, and the case remanded to the district court with directions to enter an order requiring the complainant to bring in the necessary parties defendant by amendment of the bill and proper process within a time to be limited; and, if such parties are brought in, to take such further proceedings in the cause as may be proper, but in default thereof to dismiss the bill.