## BEAULIEU *v.* GARFIELD

INDIANS; TREATIES; OFFICERS; INJUNCTIONS; PARTIES TO SUITS; COURTS.

1. Where, in a suit in equity on behalf of Indians to enjoin the Secretary of the Interior and the Commissioner of the General Land Office from issuing patents to certain public lands, heard on bill and answer and demurrer to the bill, the defense relies upon a certain treaty between the United States and the Indians as vesting the title to the lands in the United States, the court will not consider the question of whether the treaty is void as having been irregularly and fraudulently procured by the United States, in the absence of any claim in the bill to that effect.

2. Whether the treaty of February 22, 1855, between the United States and the Chippewa Indians, whereby certain lands were granted to the United States by the Indians, was abrogated by the treaty of March 11, 1863, will not be determined in a suit to which the State of Minnesota, which acquired title to part of the same lands by the act of Congress of March 12, 1860, is not a party.

3. The courts of this District have no jurisdiction over a suit, the primary purpose of which is to prevent the United States from carrying out.

an agreement entered into between the United States and one of the States.

No. 1909. Submitted December 3, 1908. Decided January 5, 1909.

. HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, sustaining a demurrer to a bill in equity to enjoin the Secretary of the Interior and the Commissioner of the General Land Office from issuing patents for certain public lands, discharging a rule to show cause why a temporary restraining order should not be granted, and dismissing the bill.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree in a suit brought in the supreme court of the District of Columbia wherein the appellant, Gus H. Beaulieu, complainant below, sought to enjoin James R. Garfield, the Secretary of the Interior, and Fred Dennett, the Commissioner of the General Land Office, from issuing patents to the State of Minnesota to certain lands under the swamp and overflow land act of March 12, 1860.

The bill alleges that the appellant is a mixed-blood Chippewa Indian and a member of the band, or consolidation of bands, commonly known as "the Chippewa Indians in the State of Minnesota," and that he brings this suit in his own right and in behalf of other members of said bands jointly interested with him in this action; that the Chippewa Indians are equitable owners of large tracts of land in the State of Minnesota secured to them by the terms of the treaties of August 19, 1825, February 22, 1855, March 11, 1863, May 7, 1864, and March 19, 1867, and confirmed to them by the acts of Congress approved January 14, 1889, and the acts amendatory thereof approved August 19, 1890, and June 27, 1902; that, under the acts of January 14, 1889, and those amendatory thereof, the lands are held in trust by the United States for the beneficial use of said Indians, and that the title to said lands is claimed by said Indians to have been uninterruptedly in them from time immemorial. It is al-

leged that the Secretary of the Interior has already approved for patent certain lists of the lands so owned by said Indians, and threatens to direct the Commissioner of the General Land Office to issue patents to the State therefor; "that the said threatened action is without warrant in law, is in violation of the rights of this plaintiff and the other said Indians, guaranteed to them under the said treaties, agreements, and acts of Congress, and is subversive of the trust created as aforesaid for the said Chippewa Indians;" that, if the threatened action is carried into effect, the complainant and his associates will be deprived of upwards of 100,000 acres of land without due process of law; that the threatened injury is imminent and its effect irremedial, and that plaintiff and his associates have no adequate remedy at law or other process of jurisdiction which may be invoked for the protection of their property rights.

Defendants demurred to the bill, first, on the ground that the suit is, in effect, a suit against the United States; second, that it does not appear there is any right, title, or interest in complainant to any lands with respect to which relief is sought; third, that the court is without jurisdiction to interfere with these defendants as officers of the United States in their decision as to the distribution of the lands mentioned, so long as the legal title to the lands remains in the United States; fourth, that the defendants are sued in their official capacity with regard to matters entirely removed from the province of the courts, and the court is, therefore, without jurisdiction to control their discretion or judgment in the premises; and, fifth, that it is sought to enjoin the defendants from turning over certain lands to the State of Minnesota, and to prevent the State of Minnesota from acquiring said lands, and that the State would be affected by any decree entered herein, and is, therefore, a proper party to this action.

In response to the rule to show cause, the defendants answered, admitting that complainant is a mixed-blood Chippewa Indian and a member of the consolidated bands referred to in the various acts of Congress providing for the relief and civilization of the Chippewa Indians in Minnesota; but they deny the right of

the complainant to exhibit his bill against the defendants, pointing out that he has failed to designate what particular lands are threatened to be turned over improperly to the State, and they deny that the Chippewa Indians are the equitable owners or have any title whatever to all of the said lands in the State of Minnesota claimed to be secured to them by successive treaties.

The answer further alleges that the lands referred to in the bill of complaint were originally part of the country occupied by the several bands of Chippewa Indians in the northern part of the territory now embraced in the State of Minnesota, and that a treaty was concluded with these Indians February 22, 1855, by which the Indians ceded all their right and title to a large body of the lands formerly occupied by them, including such lands as would be affected by the decree prayed in this suit. It is alleged that, under the act of Congress of March 12, 1860, extending the provisions of the swamp land act of September 28, 1850, to the State of Minnesota, the lands here in question became vested in the State of Minnesota and the identification of the particular lands granted as swamp and overflow lands was left to the determination of the Secretary of the Interior. It is further alleged that the Secretary of the Interior, in determining the lands granted by the act of March 12, 1860, has threatened no action which is without warrant of law, or which is in violation of the rights of complainant or other of said Chippewa bands of Indians; and defendants deny that any action has been commenced by them which would deprive the complainant and his associates of any lands to which they are legally entitled.

It is further alleged "that the whole matter of selecting the lands which are swampy in character and which may be disposed of in conformity with the swamp-land-grant act of March 12, 1860, and the selection of such lands as may be disposed of and the proceeds thereof devoted to the benefit of the said Chippewa bands, are matters placed by law within the province of the Secretary of the Interior, and are to be decided by his sound discretion, and involve the necessity of his consideration and judgment; and with the exercise of this discretion and judgment this court has no jurisdiction to interfere." The cause was heard

in the court below upon bill and answer and the demurrer of defendants.    The court entered a decree discharging the rule to show cause, sustaining the demurrer and dismissing the bill. From this decree, the case comes here on appeal.

*Mr. Chauncey E. Richardson* and *Mr. Louis A. Pradt* for the appellant.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. Stuart McNamara,* Assistant, for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

There appears to be but one question in this case that requires our consideration: Did the treaty of 1855 operate as a conveyance of the lands in question from the Indians to the United States?    It is conceded at bar by counsel for complainant that, if it did, complainant would have no standing in this court.    It is clear that, if the treaty of 1855 conveyed the lands to the United States, free from any trust for the benefit of the Indians, the act of Congress of March 12, 1860, extending the provisions of the swamp land act of 1850 to the State of Minnesota, operated as a grant *in præsenti* to the State of the swamp and overflow lands here in question.    Having once acquired an inchoate title to the lands, the State could not be devested of its ultimate right to a conveyance by any subsequent treaty or agreement between the United States and the Indians, to which the State was not a party.

No allegation as to the invalidity of the treaty of 1855 appears in the bill.    It is, however, contended by counsel for complainant, both in their brief and argument in this court, that the treaty is void because engaged in on behalf of the Indians by only a small number of the bands, and for the further reason that the United States forfeited any right it was to acquire under the treaty by failing to fulfil its part of the agreement by payment to the Indians of the stipulated consideration.    In support

of this contention, it is insisted by counsel for complainant that the court, in determining the validity or invalidity of the treaty of 1855, may take into consideration the interpretation placed upon it by both the government and the Indians in the subsequent treaties and negotiations, where the treaty of 1855, it is urged, was ignored and treated as wholly void. Complainant, in his bill, however, makes no attack whatever upon this treaty, or raises any issue as to its validity. Being bound by the record, its silence on this point relieves us from passing upon this question. The treaty shows no defects upon its face. By its terms, the Indians ceded to the United States all their right and title to a large body of lands formerly occupied by them and specifically bounded and described in the treaty. The language of the treaty is clear and unambiguous, and it provides, among other things, as follows: "The Mississippi, Pillager, and Lake Winnibigoshish bands of Chippewa Indians hereby cede, sell, and convey to the United States all their right, title, and interest in and to the lands now owned and claimed by them, in the territory of Minnesota, and included within the following boundaries." [10 Stat. at L. 1165.] (Here certain territory is specifically bounded and described.) The following general conveyance of all their lands appears in art. 1 of the treaty: "And the said Indians do further fully and entirely relinquish and convey to the United States, any and all right, title, and interest, of whatsoever nature the same may be, which they may now have in and to any other lands in the territory of Minnesota or elsewhere." Article 2 reserves certain lands therein specifically described for permanent homes for said Indians. These lands, however, are not involved in this controversy. It is admitted that the lands embraced in this controversy are part of the lands ceded by this treaty.

It is insisted by counsel for complainant that, inasmuch as the bill filed below alleges the unextinguished title of the Indians, citing in support of the allegation the various treaties and acts of Congress, they can now assail the validity of the treaty of 1855 by reference to the treaty of 1863, which, it is insisted, by its terms, rescinded and abrogated the former treaty. This posi-

tion would have some strength were the question before us one solely betwen the Indians and the United States, with no intervening rights. It will hardly be contended that the government and the Indians could stipulate into the treaty of 1863 conditions rescinding the treaty of 1855, that can now be used to defeat the intervening rights acquired in 1860 by the State of Minnesota. Complainant has not put himself in position by the allegations of his bill to attack the treaty of 1855. If it be true, as set forth in the brief of counsel for complainant, that the treaty of 1855 was illegally procured; that it was not executed by the requisite number of Indians to bind the consolidated bands; that it was irregularly and fraudulently procured, and that the government has dealt unfairly with these Indians,— these facts should appear by affirmative declaration in the bill, supported either by evidence or an admission of their truth. But, as to this whole contention, the record is silent. However the equities of the case might appeal to us, we are powerless to extend relief. So far as this record discloses, the determination of the character of the lands granted under the act of 1860 is vested in the Secretary of the Interior. He is proceeding by express authority of law, and the title to the lands has not passed from the United States. This presents a situation with which the court has no jurisdiction to interfere.

Many reasons are apparent why this case, as presented, is not within the jurisdiction of the courts of this District. The primary purpose of this suit is to prevent the United States from carrying out an agreement entered into between it and the State of Minnesota. Here jurisdiction fails at three points: First, it is a suit against the United States, and, in the absence of express authority from Congress, the courts have no jurisdiction to entertain such an action. *Naganab* v. *Hitchcock,* 202 U. S. 473, 50 L. ed. 1113, 26 Sup. Ct. Rep. 667. Second, the State of Minnesota, in any action affecting the title to the lands in question, is an indispensable party; and this action must fail for defect of parties defendant. *Shields* v. *Barrow,* 17 How. 130, 15 L. ed. 158. Third, the bill could not be so amended as to make the State of Minnesota a party defendant, for that

would be a suit by a citizen against a sovereign state, which is forbidden by the 11th Amendment to the Constitution of the United States. Hence, there is no possible avenue open through which the complainant upon this record can secure the relief sought.

So far as we are advised, we must consider the treaty of 1855 as a valid cession of the lands in question to the United States. They at once became a part of the government domain, over which Congress has exclusive control. By the swamp land act of 1860, the lands were granted to the State of Minnesota. No subsequent treaty or negotiation between the United States and the Indians, tending to rescind the treaty of 1855, without the consent of the State, could in any way affect the State in the enjoyment of its rights. We are not called upon to express any opinion as to just what the effect would be on the State could it be shown that the treaty of 1855 was void *ab initio.* As we have observed, that question is not properly presented for our consideration.

The judgment is affirmed, with costs, and it is so ordered.

*Affirmed.*