HENRY *v.* SUTTLE *et al.*

*(Circuit Court, D. New Jersey. March 25, 1890.)*

**1.** EQUITY—PLEADING AND PROOF—VARIANCE.

Where a bill prays that a deed be set aside on the ground that its execution was procured by fraudulent representation of one of the defendants that it was simply a power of attorney, and the evidence shows that complainant had never executed the deed, and that her signature thereto was a forgery, the variance is fatal.

**2.** SAME—LACHES.

Complainant took no steps to set aside the alleged fraudulent deed for five years after its execution, when she instituted an action which at the end of two years and a half was dismissed because not brought to a hearing. She then remained inactive for 10 years longer, during which time the land greatly increased in value, and passed to third persons, who made valuable improvements thereon. *Held,* that complainant's laches barred any equitable relief.

In Equity.

*H. M. Hitchings,* for complainant.

*John W. Griggs* and *Michael Dunn,* for defendants.

GREEN, J.  This bill was filed to set aside a certain deed of convey-
ance alleged to have been procured by one John Rennet from the com-
plainant by "fraud and deceit, and by false and fraudulent representa-
tions."   The lands which were the subject of this conveyance are situate
in Paterson, in this state, and are now claimed to be legally owned by,
and are in the possession of, the defendants Suttle, Mirandom, Liotard,
and Hinchcliffe, by virtue of sundry mesne conveyances to them.    These
defendants claim to have purchased the premises in good faith, relying
upon the validity of their grantor's title, and for value.    The allegations
of the complainant, as set out in her bill of complaint, are that previous
to 1870 she had been a servant in the family of John Rennet, for many
years.    While living in his family in that capacity, she became seised
and possessed of a certain parcel or tract of land in Paterson, unproduc-
tive in its character.    Unable to pay the taxes which had been and were
annually assessed against the land in question, at her request Rennet
paid them for her, and so in time she became indebted to him in various
sums, increasing constantly, for which she gave him mortgages as secu-
rity.    The last mortgage so given by her was for the sum of $729.    It
was admittedly a valid lien upon her lands.    In 1870, the complainant
asserts, she became desirous of selling and disposing of these lands, and,
the better to accomplish her purpose, as she alleges in her bill of com-
plaint, upon the advice and at the suggestion of Rennet, "ignorantly
made, executed, and delivered to the said Rennet a paper which she has
since discovered to be a deed of conveyance of said tract or parcel of land
and premises, it being falsely and fraudulently represented to her by the
said Rennet at the time of the said execution, and she thoroughly be-
lieving and relying upon the same, that the paper which she so execut-
ed and delivered was surely and solely an agreement or power of attorney
to enable said Rennet to sell and dispose of said lands for her benefit,
and to pay over to her the proceeds of the same, after deducting the sum
of $729 then claimed by said Rennet to be due to him, and secured by
a mortgage upon said land; that the complainant did not intend or un-
derstand that she was executing a deed to the said Rennet, or was in any
way parting with the legal title to said lands; that the said Rennet, hav-
ing procured said deed by said false and fraudulent representations and
deceit, caused said deed, on the same day, to be filed for record in the
office of the clerk of the county of Passaic."   It further appears from the
record in this cause that, on the same day that this deed was executed
and recorded, Rennet caused the mortgage upon the lands in question,
given to him by the complainant to secure $729, to be canceled of rec-
ord; and, although it is not important, in the view I have taken of the
case, it may be here stated, Rennet always claimed that the lands in
question were in fact conveyed to him in satisfaction of this mortgage
debt, and of other indebtedness of the complainant to him, amounting
to about $1,900.    The bill further charges that after the execution of the
said deed of conveyance, and some time in the year 1874, Rennet, to-
gether with his wife, made, executed, and delivered to the defendant
William T. Suttle a mortgage upon said premises to secure the sum of

$1,000, which mortgage was immediately recorded in the office of the clerk of the county of Passaic. In August, 1875, it appears that the complainant exhibited in the court of chancery of New Jersey her bill of complaint, against Rennet and wife and William T. Suttle, to have the deed to Rennet set aside on the ground that it was obtained from her by Rennet's false and fraudulent representations. In that bill of complaint the statements and allegations of the complainant touching the making, execution, and delivery of the deed to Rennet are practically identical with the statements and allegations of her bill of complaint in this court. As both bills prayed for injunctions against the defendants therein, they were duly verified by the complainant's oath. It further appears that the defendants to the bill of complaint filed in the court of chancery of New Jersey fully answered the same; Rennet, in his answer, denying the fraudulent and false allegations under oath, and Suttle claiming to be a *bona fide* mortgagee. The cause was never brought on for hearing; but, after repeated orders upon complainant to speed her cause, made by the chancellor upon motion of the defendants, the bill of complaint was dismissed, upon the written consent of the solicitor of the complainant, in 1877,—more than two years after the commencement of the complainant's suit, and more than seven years after the making of the deed to Rennet. It does not appear that any *lis pendens* was filed in the office of clerk of Passaic county by way of notice of the complainant's claim, as could have been done under the statute law of New Jersey. In 1878 the Suttle mortgage was foreclosed in the circuit court of Passaic county. The record of that foreclosure suit, as it appears in evidence in this cause, is regular and orderly in all respects. The final decree directed the sale of the lands and premises in question. At such sale, Matthew Suttle, an uncle of William T. Suttle, purchased the property; and to him a deed was made by the sheriff of Passaic county, who executed the writ of *fieri facias*. The defendants other than William T. Suttle derived their titles to the lands in question from Matthew Suttle. There is no evidence that William T. Suttle had, at the time of the execution of the mortgage to him by Rennet, any notice or knowledge of the claim of the complainant to the mortgaged premises. The bill contains, also, a charge against all the defendants of conspiracy to deprive the complainant of her property, but such charge may be dismissed with the statement that there is no evidence to sustain it. The prayer of the bill is that the complainant may be decreed to be the rightful owner in fee of the premises in question; that the deed to Rennet may be decreed to have been obtained from the complainant by false and fraudulent representations, and declared to be void and of no effect, and to have conveyed to Rennet no right, title, and interest in or to the said premises; that the dismissal of the complainant's suit in the court of chancery was obtained by fraud; that the circuit court of Passaic county never acquired jurisdiction over the property of the said complainant, or over her, because of her non-residence in New Jersey; and that the defendants may be declared and decreed to have secured and taken their deeds of said property with full notice of the rights of the complainant

therein, and subject thereto, and that they have no right, title, or interest in and to the same, and that they should account for all moneys, emoluments, rents, issues, and profits received therefrom. There was also a prayer for injunction and for a receiver. The defendants have answered fully and under oath. They deny all charges of fraud or conspiracy, and claim to be *bona fide* purchasers of the lands in question for a valuable consideration, without notice.

Upon examination of the testimony taken under these issues, it at once becomes apparent that the complainant has, for some cause, shifted her grounds of complaint. . She does not pretend to substantiate or justify the allegations made so specifically in her bill of complaint, but introduces, for the first time in her proofs, novel and more criminal charges against her employer, Rennet, but which charges are directly in antagonism with the allegations previously made by her. Now, there is no principle more firmly entrenched in equity practice than that a complainant must recover, if at all, upon the case made by and stated in the bill of complaint, and upon that alone. It is never permitted to a complainant to make one case by the specific allegations of the bill, and a wholly different one by the proofs, and yet be entitled to a decree. It is not only necessary that the substance of the complainant's case should be proved, but, to entitle him to a decree in his favor, it must be substantially the same case as that which he has stated in his bill; for the court will not allow a defendant to be taken by surprise, by permitting the complainant to prove a case different from that set up in the pleadings. It is absolutely essential that the *allegata* and the *probata* must correspond. Thus, where the bill sought to establish a trust by virtue of an express agreement, and the evidence was of a purely resulting trust, in an entirely different person and at a different time, the variance was held to be fatal. *Midmer* v. *Midmer,* 26 N. J. Eq. 299; *Same Case,* (on appeal,) 27 N. J. Eq. 548. And in another case, strongly illustrating the principle stated, where a bill filed to set aside a sale on the ground of fraud charged that there was collusion between an administrator and his son, to whom the property was sold, by which the son obtained an unfair advantage over other bidders, and purchased the property at a less price than it was worth, and the evidence showed satisfactorily that the son purchased the premises not by collusion with his father for his own benefit, but that they were in fact purchased for his father, although the sale was void because in violation of the well-settled doctrine of equity forbidding a trustee from becoming indirectly the purchaser at his own sale, yet it was held that the complainant was not entitled to relief upon that ground, because it was not the case made by the bill. *Howell* v. *Sebring,* 14 N. J. Eq. 84. The fatal effect of an essential variance between the allegations of the bill of complaint and the proofs under it is clearly stated in Story, Eq. Pl. 36, and notes; Gres. Eq. Ev. 23, 161; *Parsons* v. *Heston,* 11 N. J. Eq. 155; 1 Daniell, Ch. Pr. *860; *Shields* v. *Barrow,* 17 How. 144; *Lloyd* v. *Brewster,* 4 Paige, 537; *Railroad Co.* v. *McFarlan,* 30 N. J. Eq. 180; *Andrews* v. *Farnham,* 10 N. J. Eq. 94; *Marshman* v. *Conklin,* 21 N. J. Eq. 546; *Vansciver* v. *Bryan,* 13 N. J. Eq. 436. In

the last case cited, (*Vansciver* v. *Bryan,*) Chancellor GREEN states the principle in these apt words:

"Evidence relative to matters not stated in the pleading, nor fairly within its general allegation, is impertinent, and cannot be made the foundation of a decree."

Applying this rule to the case now under consideration, and it becomes instantly apparent that the complainant must be denied any relief. The charge of fraud made in her bill is that, at the suggestion and by the advice of Rennet, her employer, and in whom she had entire confidence, she executed a certain writing which, as she was assured by Rennet, was simply and solely a power of attorney, in effect authorizing him to sell certain lands for her, and to account to her for the proceeds, while in truth the writing which she so executed ignorantly and trustfully was, as she discovered some time afterwards, a deed in fee-simple to Rennet for the lands in question. But not one *scintilla* of proof has been offered to sustain this charge. On the contrary, a very different case is sought to be made by all the evidence offered by the complainant, and that is that the complainant never signed, executed, or delivered to Rennet any deed or agreement or power of attorney or writing whatever; that Rennet never advised or counseled her to do so; that the deed which it was charged by her, at first, had been executed by her because of the fraudulent representations as to its character by Rennet had, as a matter of fact, never been signed by her; that she knew nothing of its contents; had never heard it read; had never acknowledged it before any officer authorized to take acknowledgments; had, in very truth, never seen the paper until March 29, 1889, 19 years after it bore date, when, for the first time, her attention was called to it while giving testimony as a witness on her own behalf in this cause. In other words, in her testimony she denies emphatically, and absolutely repudiates, all the allegations she had made in her bill of complaint touching the writing or deed in question, and the circumstances under which it was executed; and, Rennet being dead, she now boldly brings against him charges which, if true, should have been called to the attention of the grand inquest of Passaic county years ago. There remains no pretense in her evidence that her excess of faith and overconfidence in her employer, who had been so kindly paying her debts, led her into the execution of a writing of which she did not know the contents or effect; but she declares that the deed by which Rennet claimed title is a forgery, pure and simple. A greater variance between the *allegata* and the *probata* could hardly be conceived, and such variance must be held fatal to the success of the complainant in this case.

Arriving at this conclusion, it is hardly necessary to consider the other issues presented by the pleadings. Yet I think it proper to state that nowhere in the evidence offered by the complainant do I find any satisfactory proof of fraud tainting any of the transactions of which she complains. Neither in the Rennet deed, nor in the Suttle mortgage, nor in the foreclosure proceedings in the circuit court of Passaic county, nor in the dismissal of complainant's bill in the court of chancery of New Jer-

sey, nor in the conveyance of parcels of these lands to the respective defendants, is there visible any taint caused by fraudulent acts of any of the defendants; while, on the other hand, I cannot but conclude, from the testimony, that the defendants come into this court with clean hands.

Nor do I think that the complainant has shown such diligence in asserting her claim as to clear her from the charge of laches. For five years, admittedly, she slept upon her alleged rights. Then she asserted them, indeed; but so feeble was that assertion that in two and a half years it died of inanition. Then followed 10 years of absolute inaction. During that time these defendants, or some of them, expended large sums of money in the improvement of these premises. Because of this expenditure, and, as well, because of the growth of the city of Paterson, this unproductive property once belonging to the complainant has doubled, quadrupled perhaps, in value. Now the complainant thinks the time is opportune, and seeks the aid of this court. Her delay has been remarkable. Her success would carry disaster to innocent parties. Such conduct does not commend itself to a court of equity. The bill of complaint is dismissed, with costs.