AMERICAN SECURITY BANK, Plaintiff-Appellee, *v.* CLYTIE NISHIHARA, Defendant-Appellant

NO. 8493

HONORABLE ARTHUR T. UEOKA, JUDGE

(CIVIL NO. W76-610)

JANUARY 3, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Defendant Clytie N. Nishihara appeals from the judgment holding her liable on a promissory note in favor of plaintiff American Security Bank (the Bank) and dismissing her counterclaim for damages under the Truth-In-Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*

The issues raised on appeal are:

1. Whether the court erred in finding defendant liable on the note.

2. Whether the complaint failed to join an indispensable party and should have been dismissed.

3. Whether the court erred in dismissing defendant's counterclaim.

We answer no to all the questions and affirm the judgment.

On June 25, 1975, defendant and her husband, Denis Y. Nishihara (Denis) executed and delivered to the Bank a note in the principal amount of $6,693.43 (the Note).

On January 27, 1976,[1] a decree was entered granting Denis an absolute divorce from defendant (the Decree). The Decree incorpo-

---

[1] Finding of Fact No. 3 erroneously states that defendant and Denis were decreed to be divorced on January 5, 1976.

rated by reference the agreement in contemplation of divorce dated January 5, 1976 (the Agreement), which provided *inter alia:*

    3. The Husband agrees to pay all outstanding debts of the marriage incurred as of the date hereof and these debts include those listed on Exhibit "A" attached hereto. Any unknown debts not listed on Exhibit "A" are assumed by the Husband and he agrees to hold the Wife harmless from all debts now owed by the parties known or unknown.

Exhibit "A" attached to the Agreement listed, among others, an outstanding debt of $5,998.43 owed to the Bank.

On July 19, 1976, Denis filed a petition for bankruptcy. The petition listed the Bank as an unsecured creditor for $5,998.43. On July 20, 1976, the referee in bankruptcy issued a restraining order enjoining the Bank and other creditors from commencing any suit for recovery of debts against Denis. Denis was discharged in bankruptcy on October 26, 1976.

On November 16, 1976, the Bank sued defendant for the balance due on the Note. On December 10, 1976, defendant filed her answer and counterclaimed for damages, alleging numerous violations under TILA.[2]

After a bench trial, the court entered its findings of fact and conclusions of law on August 31, 1981. On September 3, 1981, defendant's counterclaim was dismissed and a judgment for the Bank was entered, and defendant filed a notice of appeal on October 5, 1981.

## I.

In contending that she is not liable on the Note, defendant presents a novel theory. She argues that (1) under the Decree, Denis' assumption of the marital debts was in lieu of child support and alimony; (2) such "in lieu" assumption of marital debts cannot be

---

[2] Since the Bank raised the defense of statute of limitations against defendant's counterclaim, the case remained dormant pending the decision in *Pacific Concrete F.C.U. v. Kauanoe,* 62 Haw. 334, 614 P.2d 936 (1980), which held that a debtor's counterclaim alleging TILA violations in a creditor's collection suit is in the nature of a recoupment defense and is not barred by the statute of limitations contained in TILA, 15 U.S.C. § 1640(e).

discharged in bankruptcy;[3] (3) the Bank's failure to contest the bankruptcy court's discharge of Denis' marital debts effectively released defendant, a joint obligor, from liability on the Note; and (4) holding defendant liable on the Note is contrary to public policy. Defendant's reasoning is flawed and unconvincing.

First, the Agreement incorporated in the Decree does not expressly provide that Denis' assumption of marital debts is in lieu of payment of child support and alimony.

Second, the district court below was not the proper forum for the construction of the Decree. For a determination that Denis' assumption of marital debts was in lieu of child support and alimony payments and, therefore, not dischargeable in bankruptcy, defendant should have gone to the family court, *Young v. Young,* 234 Ga. 256, 215 S.E.2d 258 (1975); *Jones v. Jones,* 300 Minn. 182, 220 N.W.2d 287 (1974); *Cunningham v. Cunningham,* 497 S.W.2d 941 (Ct. App. Ky. 1973); *Nesbit v. Nesbit,* 80 N.M. 294, 454 P.2d 776 (1969), or to the bankruptcy court, *Matter of Catlow,* 663 F.2d 960 (9th Cir. 1981); *In re Spong,* 661 F.2d 6 (2d Cir. 1981); *Shacter v. Shacter,* 467 F. Supp. 64 (D. Md. 1979), *aff'd,* 610 F.2d 813 (4th Cir. 1979).

Third, the Bank owed no duty to defendant to challenge the discharge in bankruptcy of the debt owed it by defendant and Denis. *In re Spong, supra,* cited by defendant, does not impose such duty on the Bank. In *Spong,* the judgment of divorce required the husband to pay the wife's attorney his fee in monthly installments. The attorney, as a creditor, resisted the discharge in bankruptcy of the fee owed him on the ground that the husband's undertaking to pay his wife's legal fee fell within the definition of alimony and support.

Fourth, inaction by the Bank did not constitute a release of Denis under the Uniform Joint Obligations Act, Hawaii Revised Statutes (HRS) ch. 483 (1976). Defendant ingeniously argues that the Bank's failure to contest the discharge of Denis in bankruptcy constituted a release by the Bank of Denis from the Note, and that since such release was without reservation of rights against defendant, a joint

---

[3] In 1976 when Denis filed for bankruptcy, Section 17A(7) of the Bankruptcy Act (11 U.S.C. § 35(a)) provided:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (7) are for alimony due or to become due, or for maintenance or support of wife or child . . . .

obligor, the Bank's claim against defendant was satisfied under HRS § 483-5, which provides in pertinent part:

> If an obligee releasing or discharging an obligor without express reservation of rights against a co-obligor, then knows or has reason to know that the obligor released or discharged did not pay so much of the claim as he was bound by his contract or relation with that co-obligor to pay, the obligee's claim against that co-obligor shall be satisfied to the amount which the obligee knew or had reason to know that the released or discharged obligor was bound to such co-obligor to pay.

Defendant contends that the Bank had reason to know that Denis had agreed with defendant to assume and pay the entire balance of the Note. There is nothing in the record to support that contention.

We construe an HRS § 483-5 "release" or "discharge" to mean a voluntary and knowing release or discharge of an obligor by an obligee. *See* 76 C.J.S. *Release* §§ 9, 24 (1952 & Supp. 1982). Otherwise, the requirement of an "express reservation of rights against a co-obligor" is meaningless. An obligee's inaction under these circumstances cannot result in a § 483-5 release or discharge — constructive, implied or otherwise.

Fifth, the bankruptcy and divorce cases cited by defendant and the Bankruptcy Act merely pronounce the public policy that a husband shall not be discharged in bankruptcy from his obligation for child support, maintenance and alimony. We are unaware of any public policy requiring the release of a wife from marital debts assumed by the husband in a divorce proceeding. Defendant in fact admits that the Decree did not release her obligation under the Note. So we fail to understand how "public policy" requires the intervening discharge of Denis in bankruptcy to result in defendant's release.

## II.

Defendant claims that Denis was an indispensable party in this action. Thus, the trial court erred in denying her Rule 12(b), District Court Rules of Civil Procedure (DCRCP) (1981),[4] motion to dismiss.

---

[4] Rule 12(b), District Court Rules of Civil Procedure (DCRCP) (1981), provides in pertinent part:

(b) *Defenses – How Presented; Motions.* Every defense, in law or fact, may be

We disagree.

Initially, we hold that being a co-obligor on the Note does not *per se* result in Denis being an indispensable party. The Bank's note expressly provides that it "binds jointly and severally all signing as Borrower." The general rule is that "as joint and several obligations involve separate obligations on the part of each obligor each may be sued separately." 2 Williston on Contracts § 328, at 675 (W. Jaeger 3d ed. 1959 & Supp. 1982). *See Jett v. Phillips & Associates,* 439 F.2d 987 (10th Cir. 1971).

Professor Hazard states that "an indispensable party is one whose relationship to the controversy is so immediate and so intimate that the court is said to be *unable* to proceed without him." G.C. Hazard, Jr., *Indispensable Party: The Historical Origin of a Procedural Phantom,* 61 Colum. L. Rev. 1254 (1961) (emphasis in the original). The classic federal test in determining indispensability as set forth in *Shields v. Barrow,* 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1855) is that indispensable parties are

> Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and' good conscience.

58 U.S. (17 How.) at 139, 15 L. Ed. at 160.

Our supreme court has stated, "The rule regarding indispensable parties is founded on equitable considerations, and is not jurisdictional." *Midkiff v. Kobayashi,* 54 Haw. 299, 324, 507 P.2d 724, 739 (1973). In determining indispensability, the courts have con-

---

asserted in a written answer. The following defenses may at the option of the pleader be made by motion: . . . (7) failure to join an indispensable party. . . .

Prior to the 1972 amendment, the wordings in Rule 12(b)(7), Hawaii Rules of Civil Procedure (HRCP), and Rule 12(b)(7), DCRCP, were exactly the same. Now, however, Rule 12(b)(7), HRCP (1981), reads "(7) failure to join a party under Rule 19," and thus differs from Rule 12(b)(7), DCRCP.

Prior to the 1972 amendment, Rule 19, HRCP, dealt with necessary joinder of parties. Rule 19, HRCP (1981), now deals with joinder of persons needed for just adjudication. DCRCP contains no Rule 19 or an equivalent.

Rule 12(b)(7), Federal Rules of Civil Procedure (FRCP), is the same as Rule 12(b)(7), HRCP. Rule 19, FRCP, is in substance the same as Rule 19, HRCP. The changes in Rules 12(b)(7) and 19, FRCP, were effected in 1966.

sidered and weighed the following factors: (1) the possibility that an absent person will be adversely affected; (2) the possibility of inconsistent judicial decisions imposing undue hardship on the defendant; and (3) the likelihood of the defendant being harassed by multiple suits. *See* Note, *Indispensable Parties in the Federal Courts*, 65 Harv. L. Rev. 1050 (1952); 3A J. Moore & J. D. Lucas, *Moore's Federal Practice* ¶ 19.07[1] (2d ed. 1982).

Applying the foregoing principles, we find that the trial court properly held that Denis was not an indispensable party. Having obtained a discharge in bankruptcy, there was no possibility of Denis being adversely affected by a decision for or against defendant. There could be no inconsistent decisions to impose undue hardship on defendant. Even if the family court or bankruptcy court should determine that Denis' assumption of the marital debts was in lieu of child support and alimony payments and, thus, such debts were not dischargeable in bankruptcy, that would not release defendant *vis-a-vis* plaintiff. Also, there is absolutely no likelihood of defendant being harassed by multiple suits.

## III.

Defendant claims that specification of an annual percentage rate of "14:35%" rather than "14.35%" violated the disclosure requirements of TILA.[5] We disagree.

This claim was first made in Defendant's Post-Trial Memorandum filed on August 25, 1981, after the presentation of evidence had been completed on August 7, 1981. This was grossly unfair on the part of defendant since the Bank was deprived of an opportunity to present evidence that the alleged violation was unintentional and resulted from a bona fide error. 15 U.S.C. § 1640(c); *Turner v. Firestone Tire & Rubber Co.*, 537 F.2d 1296 (5th Cir. 1976); *Palmer v. Wilson*, 502 F.2d 860 (9th Cir. 1974).

---

[5] The Truth-In-Lending Simplication and Reform Act of 1980, 94 Stat. 168, amended TILA in many respects. The changes brought about by the amendments took effect on April 1, 1982. Revised Truth-In-Lending Regulation Z went into effect on October 1, 1982.

In our review of this case, we have applied pre-Simplification Act TILA and pre-1982 Regulation Z.

Be that as it may, we fail to see how the use of a colon instead of a decimal point in the annual percentage rate renders the disclosure to be "totally ambiguous" and "meaningless" as claimed by defendant. Defendant's contention that the annual percentage rate may be interpreted to mean 14/35% or be read as 35% or 14% is strained and unreasonable.

Further, the record indicates that the annual percentage rate was explained to defendant and Denis before they executed the Note. At trial, Hiroo Watanabe, branch manager of the Bank, testified as follows:

Q [Mr. Benco] Did you read that [the front page of the Note] to them or just summarize it in your own words?

A I explained to them about the *percentage rate*, term of the loan, monthly payments.

Transcript at 14 (emphasis added).

We hold that the trial court did not err in finding and concluding that there was no violation of disclosure requirements under TILA by the Bank. The dismissal of the counterclaim was proper.

Affirmed.

*Fred Paul Benco* for defendant-appellant.

*Walter T. Shimoda* for plaintiff-appellee.