**MATHIAS P. THORNLEY** and **GWENDOLYN V. THORNLEY**, Plaintiffs–Appellees, v. **JAMIE SANCHEZ** and **MICHELE RODA–VILLANUEVA**, Defendants–Appellants

NO. 15823

(CIV. NO. E88–2044)

AUGUST 27, 1993

BURNS, C.J., HEEN, AND WATANABE, JJ.

608

OPINION OF THE COURT BY WATANABE, J.

Defendant–Appellant Michele Roda–Villanueva (Defendant) appeals from (1) the November 9, 1989 order denying Defendant's motion for dismissal for failure to join an indispensable party; (2) the February 5, 1990 order granting a motion for entry of judgment against Defendant; and (3) the October 25, 1991 judgment entered by the District Court of the First Circuit, awarding $6,422.11 to Plaintiffs–Appellees Mathias P. and Gwendolyn V. Thornley (collectively, the Thornleys) for breach of the terms of an assumption deed. We affirm the order denying Defendant's motion for dismissal and the judgment in favor of the Thornleys. However, because our review of the record reveals that the October 25, 1991 judgment awarded damages to the Thornleys for amounts already paid to them by Defendant, and also awarded

them attorney's fees in excess of the amount authorized by Hawai'i Revised Statutes (HRS) § 607–17 (1985), we remand this case to the trial court, with directions to amend the judgment to conform to the principles discussed in this opinion.

## BACKGROUND

This lawsuit arose out of an Agreement of Sale, dated January 18, 1979, by which Defendant and her father, Jamie Sanchez (Sanchez), purchased a home in Mililani, Oahu, from the Thornleys for $89,000.

Under the Agreement of Sale, Sanchez paid the Thornleys a down payment of $25,000 and thereafter made monthly payments of $534 from March 1979 through March 1983. When the terms of the Agreement of Sale had been satisfied, the Thornleys, as "Grantors," and Sanchez and Defendant, as "Grantees," signed an Assumption Deed/Satisfaction of Agreement of Sale (Assumption Deed), dated May 11, 1983. Pursuant to this document, Sanchez and Defendant acquired legal title to the Mililani home and agreed to assume payments for the unpaid principal balance of the Thornleys' existing mortgage on the home, totaling $33,093.59.

Sanchez and Defendant subsequently abandoned the Mililani residence without giving the Thornleys any notice. Sanchez and Defendant also defaulted in making the Thornleys' monthly mortgage payments, causing the mortgage company to turn to the Thornleys for payment, since they remained secondarily liable on the mortgage note after its assumption. To prevent a foreclosure on the property, the Thornleys made three mortgage payments. In addition, as a result of their having to travel to Oahu to take possession of the Mililani property and to cure the delinquency by Sanchez and Defendant, the Thornleys incurred various other expenses.

In the meantime, Sanchez sold the Mililani home for $145,000. From the proceeds of the sale, Sanchez authorized the

escrow company to pay the Thornleys a total of $1,206.52 to reimburse them for the three mortgage payments ($1,077), the escrow shortage ($117.52), and an insufficient funds charge ($12), which they had paid to cure Sanchez' and Defendant's default. Sanchez also authorized the escrow company to withhold an additional $1,500 to reimburse the Thornleys for other expenses, pending verification. The Thornleys refused, however, to accept the $1,500 sum, and claimed that they were entitled, at a minimum, to $1,487.27 for other expenses,[1] plus $5,000 as "additional consideration" for personal time and effort expended on the matter. Exhibit G, 11/17/89 Transcript at 33–34. When the dispute between the parties could not be resolved, the Thornleys filed a complaint in the District Court of the First Circuit, Ewa Division, seeking indemnification for expenses they had incurred as a result of the breach of the terms of the Assumption Deed by Sanchez and Defendant. Their prayer for judgment requested:

1. Payment in the amount of $2,693.79[2] together with such amounts that have accrued after June 30, 1988 up to and including the date of filing of this complaint together with prejudgment interest commencing from July 11, 1988.

2. That Plaintiffs be awarded their attorney's fees and costs incurred in bringing this suit.

3. That Plaintiffs be awarded any and all other relief that this Honorable Court deems just and proper.

Record on Appeal (R.A.) at 4.

---

[1] According to the Thornleys, they were entitled to be reimbursed $419.50 for air fare, $109.92 for telephone charges, $97.72 for transportation/parking, $104 for a title search, and $756.13 for attorney's fees and costs as of June 30, 1988.

[2] The Thornleys dropped their previous request for an additional "consideration" of $5,000 for their personal time and effort.

Defendant was served with the complaint on February 11, 1989. However, Sanchez was never served. As a result, on October 19, 1989, Defendant filed a Motion for Dismissal for Failure to Join an Indispensable Party, which the court denied on November 9, 1989.

Following a bench trial on November 17, 1989, the court orally found Defendant liable for $4,373.81 in damages, exclusive of costs. The court also continued the case for sixteen weeks to permit service of the complaint on Sanchez. When that period elapsed and Sanchez had still not been served, the court granted the motion for entry of judgment against Defendant "on the condition that Jamie Sanchez is dismissed from this court proceeding with prejudice."[3] R.A. at 145. Subsequently, the court affixed its "approved and so ordered" signature to an affidavit by the Thornleys' attorney, affirming that the total judgment awarded to the Thornleys was "$5,743.17 exclusive of court costs, attorney's and sheriff's fees." R.A. at 123. A written judgment was entered against Defendant on October 25, 1991, awarding the Thornleys a total judgment of $6,422.11. R.A. at 127.

Defendant timely appealed, alleging that the trial court erred in three respects. First, Defendant maintains that Sanchez was a necessary and indispensable party to this lawsuit, and it was error for trial to have proceeded without Sanchez being served. Second, Defendant maintains that the trial court's written judgment is not supported by the evidence. Finally, Defendant argues that the trial court failed to apply or misapplied the mandatory statutory limitation on attorney's fees set forth in HRS § 607–17.

---

[3] Counsel for the Thornleys originally requested that Sanchez be dismissed without prejudice. Defendant's counsel objected and asked that Sanchez be dismissed with prejudice to protect Defendant from being dragged into further litigation or subject to inconsistent judgments. After some discussion, counsel for the Thornleys agreed to dismiss Sanchez with prejudice.

## DISCUSSION

### I.

### Necessary and Indispensable Parties

Defendant argues that Sanchez was an indispensable party in this action because he was the "principal player" in the Mililani transaction, and she executed the Assumption Deed solely for estate planning purposes. Defendant points out that she was never involved in any of the financial or administrative arrangements involving the subject property: she never paid for or contributed to the payments on the property; she never received or benefited from the proceeds of the sale of the property; and she was not otherwise involved in the transactions which led to the lawsuit. Defendant therefore argues that the trial court erred in denying her Rule 12(b), District Court Rules of Civil Procedure (DCRCP) motion to dismiss for failure to join an indispensable party. We disagree.

The clear language of the Assumption Deed signed by Defendant provides that Defendant and Sanchez were co–obligors, with joint and several liability for obligations under the Assumption Deed:

> IT IS MUTUALLY AGREED . . . that if these presents are signed by two or more Grantors or by two or more Grantees, all covenants of such parties shall, for all purposes, be joint and several.

R.A. at 7.

In a case involving a similar issue, this court rejected a defendant's argument that her former husband, a co–obligor with her on a promissory note, was an indispensable party to a bank's collection action against her on the note. *American Sec. Bank v. Nishihara*, 3 Haw. App. 594, 656 P.2d 1347 (1983). We said then:

> The general rule is that "as joint and several obligations involve separate obligations on the part of each obligor each may be sued separately." 2 WILLISTON ON

CONTRACTS § 328, at 675 (W. Jaeger 3d ed. 1959 & Supp. 1982). *See Jett v. Phillips & Associates*, 439 F.2d 987 (10th Cir. 1971).

\* \* \*

The classic federal test in determining indispensability as set forth in *Shields v. Barrow*, 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1855) is that indispensable parties are

> [p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.

58 U.S. (17 How.) at 139, 15 L. Ed. at 160.

> Our supreme court has stated, "The rule regarding indispensable parties is founded on equitable considerations, and is not jurisdictional." *Midkiff v. Kobayashi*, 54 Haw. 299, 324, 507 P.2d 724, 739 (1973). In determining indispensability, the courts have considered and weighed the following factors: (1) the possibility that an absent person will be adversely affected; (2) the possibility of inconsistent judicial decisions imposing undue hardship on the defendant; and (3) the likelihood of the defendant being harassed by multiple suits. *See* Note, INDISPENSABLE PARTIES IN THE FEDERAL COURTS, 65 Harv.L.Rev. 1050 (1952); 3A J. MOORE & J.D. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 19.–07[1] (2d ed. 1982).

3 Haw. App. at 599–600, 656 P.2d at 1351.

Applying the foregoing principles to the instant case, we find that the trial court properly held that Sanchez was not an indispensable party.

It does not appear that Sanchez will in any way be adversely affected by a trial court judgment against Defendant. As one commentator has noted, "[b]ecause a person is ordinarily not bound by litigation to which he is not a party, an absent person will seldom have any legal rights prejudiced by a judgment." Note, INDISPENSABLE PARTIES IN THE FEDERAL COURTS, 65 Harv. L. Rev. 1050, 1053 (1952). Moreover, because the case against Sanchez was dismissed with prejudice by the trial court, Sanchez will not be subject to any adverse consequences, such as inconsistent judgments, or other lawsuits.

Therefore, the trial court properly held that Sanchez was not an indispensable party.

## II.

### Damages

The Assumption Deed included an indemnification clause which provided, in relevant part:

> AND, in consideration of the foregoing conveyance, the Grantee does hereby covenant and agree to and with the Grantor . . . to indemnify and keep indemnified the Grantor against the non–payment of said Mortgage or the breach of any of said agreements, covenants, promises and conditions, or of this covenant, and all claims, damages, costs, counsel fees and expenses in connection therewith.

R.A. at 6–7.

At trial, the Thornleys introduced evidence to support their claim for indemnification of the following expenses which they claimed to have incurred as a result of Defendant's and Sanchez' nonpayment of the Thornleys' mortgage:

| | |
|---|---|
| Air fare for 6 interisland trips | $ 419.50 |
| Title report | 104.00 |
| Telephone calls | 89.86 |

| | |
|---|---:|
| Transportation/parking | 97.72 |
| Attorney's fees up to trial | 1,348.88[4] |
| Total | $2,059.96 |

Defendant argued that the foregoing expenses were not the type of expenses contemplated by the indemnification clause, and were not reasonable or necessary. Further, Defendant pointed out that the Thornleys were aware that Sanchez and Defendant had considerable equity in the Mililani property and that the Thornleys' interest in the property was thus well–protected. Defendant contended, therefore, that it was unnecessary for the Thornleys to have made the six interisland trips, since their concerns could have been handled by telephone. Furthermore, Defendant contended that there was no legitimate justification for the Thornleys to have requested a title search.

At the conclusion of the trial, the court orally ruled:

> And, based on the evidence, based on the Agreement, and based on the proof, I'm entering judgment in favor of the [Thornleys] in the amount of the remaining payments based and in accordance with the breakdown, I will allow the air fares, the — I'm allowing the air fares, telephone charges, transportation, parking, title search, attorney's fees totalling the sum of $4,373.81 (four thousand three hundred and seventy–three dollars and eighty–one cents), together with costs in this matter against the named defendant. That's all.

11/17/89 Transcript at 46–47.

---

[4] This figure represents the amount due as of July 27, 1988, taking into account a $150 offset from the Thornleys' retainer fund. The invoices submitted by the Thornleys indicate that the actual amount of attorney's fees incurred as of that date was $1,498.88.

The court did not immediately enter judgment against Defendant, however, but continued the case for sixteen weeks to allow the Thornleys to serve Sanchez with the complaint. When Sanchez still could not be served and was subsequently dismissed from the suit with prejudice by stipulation of the parties, the court entered judgment against Defendant. Thereafter, on September 6, 1990, the Thornleys' trial counsel filed an affidavit in court, affirming that as a result of the trial, the court awarded judgment against Defendant for $4,373.81. Additionally, the Thornleys' counsel, in Paragraphs 4 and 6 of his affidavit, stated as follows:

> 4. In addition to the aforesaid amount, the Court awarded [the Thornleys] the further sum of $1,369.36 for fees and costs incurred by [the Thornleys] in bringing this action.
>
> * * *
>
> 6. That the total judgment awarded to [the Thornleys] against Defendant MICHELE RODA–VILLANUEVA was $5,743.17 exclusive of court costs, attorney's and sheriff's fees.

R.A. at 123. The trial judge affixed his signature below an "approved and so ordered" stamp at the bottom of the Affidavit.

When the court issued its written judgment dated October 25, 1991, however, the following itemized amounts were awarded to the Thornleys:

| | |
|---|---|
| AMOUNT CLAIMED BY PLAINTIFF | $5,633.53 |
| INTEREST | –0– |
| ATTORNEY'S COMMISSION FEES | 768.58 |
| COSTS OF COURT | 10.00 |
| SHERIFF'S FEES | 10.00 |
| MILEAGE | –0– |
| NOTARY'S FEES | –0– |
| OTHER COST | –0– |
| TOTAL JUDGMENT | $6,422.11 |

R.A. at 127.

The discrepancy between the trial court's $5,743.17 award to the Thornleys, "approved and so ordered" by the September 6, 1990 affidavit, and the $5,633.53 sum awarded by the court in its written judgment for the "amount claimed by plaintiff" is not facially obvious. However, it is clear that several errors were committed by the trial court in entering the October 25, 1991 judgment, from which this appeal is taken.

### A. Damages Award for Amounts Already Reimbursed to the Thornleys

The trial court's award of damages to the Thornleys included an amount to reimburse them for the April, May, and June mortgage payments, the escrow shortage, and the insufficient funds check. Since those amounts, totaling $1,206.52, had previously been disbursed to the Thornleys from the escrow proceeds, the Thornleys concede that the trial court clearly erred in allowing damages for these amounts. Answering Brief at 13, 18.

### B. Attorney's Fees Awards

The trial court awarded the Thornleys various amounts for attorney's fees. The court's initial oral judgment of $4,373.81 appears to include an award of $1,348.88, the amount which the Thornleys had been billed for attorney's fees up to the trial date. The court subsequently approved the affidavit of the Thornleys' attorney, who claimed an additional $1,369.36 for attorney's fees and costs incurred by the Thornleys to bring the instant action to trial. In its written judgment, the court awarded another $768.58 for "attorney's commission fees."

Defendant contends that the trial court's award of attorney's fees to the Thornleys clearly exceeded the statutory limit on attorney's fees set forth in HRS § 607–17 (1985). We agree.

The American rule is that attorney's fees and litigation costs are not recoverable by a successful party unless there is a statute or

enforceable contractual provision expressly providing for them. 22 AM. JUR. 2D *Damages* § 611 (1988).

> Some reasons given for the rule are that, given that litigation is uncertain, one should not be penalized for bringing or defending a lawsuit, and that if the penalty for losing included paying the opponent's counsel, the poor would be unjustly discouraged from instituting actions to vindicate their rights. The time, expense, and difficulty of proof inherent in litigating the reasonableness of the attorney's fee would also impose substantial burdens on judicial administration. It has also been said that counsel fees and litigation expenses are not the legitimate consequence of the tort or breach of contract, [and] allowing these expenses to the plaintiff without allowing them to a successful defendant would give the plaintiff an unfair advantage in the contest[.]

*Id.* (footnotes omitted).

Hawai'i follows the American rule, and the appellate courts have held on numerous occasions that attorney's fees may not be awarded absent statute, stipulation, agreement, or precedent. *Cain v. Cain*, 59 Haw. 32, 42, 575 P.2d 468, 476 (1978); *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.*, 58 Haw. 606, 618, 575 P.2d 869, 878 (1978); *Shoemaker v. Takai*, 57 Haw. 599, 604, 561 P.2d 1286, 1289 (1977); *Smothers v. Renander*, 2 Haw. App. 400, 404, 633 P.2d 556, 560 (1981).

Because an award of attorney's fees is in derogation of common law, a statute allowing an award of attorney's fees is strictly construed. *Roberts v. Carter*, 350 So. 2d 78, 78–79 (1977). Further, where a statute provides for maximum amounts as attorney's fees, it is not within the power of the courts to increase the statutory allowance, however inadequate that allowance might be. *Stickney v. Goward*, 161 Minn. 457, 458, 201 N.W. 630 (1925).

The Thornleys brought the instant lawsuit to recover damages under a written contract. Therefore, HRS § 607–17, which imposes a statutory cap on the amount of attorney's fees recoverable in lawsuits or written contracts is clearly applicable to the instant case. *Gerner v. Estate of James Campbell, Deceased*, 72 Haw. 4, 803 P.2d 199 (1990); *Smothers v. Renander, supra.* The Thornleys concede this point in their Answering Brief at 18.

HRS § 607–17 provides in relevant part:

Any other law to the contrary notwithstanding, where an action is instituted in the district or circuit court on a promissory note or other contract in writing which provides for an attorney's fee the following rates shall prevail and shall be awarded to the successful party, whether plaintiff or defendant:

(1) Where the note or other contract in writing provides for a fee of twenty–five per cent or more, or provides for a reasonable attorney's fee, not more than twenty–five per cent shall be allowed;

(2) Where the note or other contract in writing provides for a rate less than twenty–five per cent, not more than the specified rate shall be allowed;

provided that the fee allowed in any of the above cases shall not exceed that which is deemed reasonable by the court.

The Thornleys claim that by virtue of the indemnification clause of the Assumption Deed, any pre–litigation attorney's fees and legal costs which they incurred as a result of Defendant's and Sanchez' breach constituted a contract debt for which the Thornleys were entitled to sue. Therefore, they were entitled to recover their attorney's fees to collect the debt, and not be subject

to the twenty–five percent statutory cap imposed by HRS § 607–17. The Thornleys contend that if this court were to construe HRS § 607–17 as limiting the total amount of attorney's fees recoverable under an indemnification clause, the net result would be that the clause would have no meaning with respect to attorney's fees and expenses as an element of damage. Answering Brief at 15.

The legislative history of HRS § 607–17 indicates clearly, however, that the statute was intended to prohibit the collection of excessive attorney's fees, including the type of double recovery which the trial court authorized in this case.

HRS § 607–17 had its genesis in Act 194, § 1, 1955 Haw. Sess. Laws 171, which imposed a thirty–three and one–third percent cap, not to exceed $250, on the amount of attorney's fees awardable in lawsuits instituted in the district courts on written contracts. In 1959, the legislature extensively revised the statute to, among other things, reduce the amount of attorney's fees which could be awarded, prohibit the collection of such fees unless collection was provided for by a written instrument, prohibit the practice of pyramiding fees, and apply the cap on attorney's fees to lawsuits brought in both the district and circuit courts. Act 218, § 1, 1959 Haw. Sess. Laws 146. In recommending passage of the bill which was ultimately enacted as Act 218, the House Judiciary Committee stated in pertinent part as follows:

> Your Committee finds (a) that an attorney's fee . . . of thirty–three and one–third per cent is a heavy burden to place on a debtor, . . . (c) that some collection agencies have succeeded in adding two or more attorney's fees . . . onto the same debt, . . . (e) that frequently a debtor is obliged to sign an instrument in writing which provides for the payment of an attorney's fee . . . when he attempts to settle an account which originally did not provide for such a fee, (f) that there are a substantial number of open

accounts which are accompanied by instruments in writing which provide for attorney's fees or collection fees.

It is the intent of your Committee: (a) that the fee that may be collected as an attorney's fee . . . in a contested action shall be no more than twenty–five per cent of the debt; . . . (f) that attorney's commission may be allowed but no attorney's . . . fee shall be allowed if prior to or at the time the debt was incurred, the debtor did not sign an instrument in writing which provided for the payment of an attorney's . . . fee; (g) *that the practice of pyramiding fees, i.e. the practice of collecting an attorney's fee . . . on a promissory note, the principal amount of which already includes an attorney's . . . fee, is prohibited by not allowing the collection of such fee*[.]

Hse. Stand. Comm. Rep. No. 103, in 1959 House Journal at 617 (emphasis added).

One of the mischiefs which the 1959 amendments purported to correct, therefore, was the practice of "pyramiding attorney's fees" — that is, charging attorney's fees on a principal amount which already included an attorney's fee.

In the instant case, the Thornleys sued for damages, including attorney's fees, which they claimed they were entitled to under the indemnification clause of the Assumption Deed. They subsequently were awarded additional attorney's fees as well as an "attorney's commission" on top of the original amount sued for, which already included attorney's fees. Based on the history of HRS § 607–17, we conclude that such recovery of attorney's fees is not allowed.

In *Hawaiian Trust Co. v. Cowan*, 4 Haw. App. 166, 663 P.2d 634 (1983), this court interpreted HRS § 607–17 as "placing a ceiling on the award of attorney's fees of *twenty–five per cent of the judgment amount, exclusive of costs and attorney's fees,* or the amount claimed plus interest, but not to exceed what is deemed

reasonable by the court." 4 Haw. App. at 173, 663 P.2d at 638 (emphasis added). In the instant case, the trial court determined that in view of the broad language of the indemnification clause of the Assumption Deed, the Thornleys were entitled to a total judgment of $731.14 for the following expenses which the court found were reasonably and necessarily incurred by the Thornleys to protect their interests in the Mililani property: $419.50 for air fare, $109.92 for telephone charges, $97.72 for transportation and parking, and $104 for a title search. Our review of the record indicates no abuse of discretion by the trial court in its award of said judgment. Therefore, based on the legislative history of HRS § 607–17 and our ruling in *Hawaiian Trust Co.*, *supra*, the Thornleys are limited to recovering from Sanchez a maximum award of attorney's fees of twenty–five percent of $731.14, plus interest.

Based on the above, we remand this case to the trial court with instructions to revise its judgment to conform to the principles announced in this decision.

*Steven Guttman* and *Derek W. C. Wong* on the briefs for defendant–appellant Michele Roda–Villanueva.
*R. Steven Geshell* on the brief for plaintiffs–appellees.