919 P.2d 1008

**GGS CO., LTD., a Japan corporation, Plaintiff–Appellee,**

**v.**

**Toshio MASUDA, Defendant–Appellant,**

**and**

**State of Hawai'i; Pal International Hawaii, Ltd., a Hawai'i corporation; Agor/Latham Architecture (Doe Defendant No. 1); John C. Ferry, Trustee (Doe Defendant No. 2); and John Does 3–50; Jane Does 1–50; Doe Partnerships 1–50; Doe Corporations 1–50; Doe Entities 1–50; and Doe Governmental Units 1–50, Defendants.**

**No. 17025.**

Intermediate Court of Appeals of Hawai'i.

July 11, 1996.

Harlan Y. Kimura (Hong, Iwai, Hulbert & Kawano, of counsel), on the briefs, for defendant-appellant.

J. George Hetherington, Steven B. Jacobson and Brian I. Ezuka (Torkildson, Katz, Jossem, Fonseca, Jaffe, Moore & Hetherington, of counsel), on the brief, for plaintiff-appellee.

Before WATANABE, ACOBA and KIRIMITSU, JJ.

ACOBA, Judge.

On April 19, 1993, Defendant–Appellant Toshio Masuda (Masuda) appealed from a March 19, 1993 circuit court order granting Plaintiff–Appellee GGS Co., Ltd.'s (GGS) motion for summary judgment on its foreclosure complaint. We affirm.

At the time of the summary judgment hearing, the record reflected the following matters. On September 29, 1989, Takanobu Mori (Mori) made, executed, and delivered to GGS a promissory note (the Note) for the principal amount of one hundred fourteen million Japanese yen, which amount, plus interest, Mori promised to pay to GGS on September 29, 1990. As security for the payment of the Note, New York Diamond, Inc. (N.Y. Diamond) through Masuda, its president, made, executed, and delivered to GGS an accommodation mortgage (the Mortgage) on five properties that it owned in the Mokule'ia Beach subdivisions on the island of O'ahu. In the Mortgage, N.Y. Diamond agreed to pay all amounts due under the Note and gave to GGS the right to recover its fees, costs, and expenses incurred in any foreclosures, sales, and/or suits made necessary by any default under the Note and/or the Mortgage.

Subsequently, Masuda, individually and on behalf of N.Y. Diamond, executed an unrecorded agreement dated March 22, 1990 (the Unrecorded Agreement) with GGS. The Unrecorded Agreement was written entirely in the Japanese language. The parties debate the purpose and effect of this document. GGS claims that in the Unrecorded Agreement, Masuda assumed all of Mori's obligations under the Note. In contrast, N.Y. Diamond and Masuda claim that the Unrecorded Agreement was merely a limited power of attorney authorizing Toshio Iida, as the representative of GGS, and Shizuo Shibuya, as the representative of Masuda and N.Y. Diamond, to negotiate and enter into further documents that would bind Masuda to certain obligations similar to those specified in the Note.

Besides this Unrecorded Agreement, the other document central to the dispute is the Amendment of Mortgage and Consent to Assumption of Mortgage (the Mortgage Amendment) executed by GGS, Masuda, and N.Y. Diamond on November 14, 1990. GGS claims that in the Mortgage Amendment, Masuda acknowledged the execution and delivery of the Note by Mori to GGS and reaffirmed his assumption of Mori's obligations to GGS. Contending that N.Y. Diamond and Masuda defaulted on their obligations by failing to pay the principal plus accrued interest on April 1, 1991,[1] GGS filed a Complaint for Foreclosure (the Complaint) on February 7, 1992.

The Complaint named N.Y. Diamond, Masuda, the State of Hawai'i, PAL International Hawaii, Ltd., and Agor/Latham Architecture as defendants. The Complaint did not name Mori as a party. On March 3, 1992, Masuda filed an answer denying the Complaint's allegation that he had "assumed Mori's obligations under the Note and the Mortgages."

On September 9, 1992, GGS moved for summary judgment on the Complaint, an interlocutory decree of foreclosure, and an order of sale against all defendants (Summary Judgment Motion). The hearing was held on September 28, 1992. Prior to the hearing, defendants State of Hawai'i and Agor/Latham Architecture were dismissed without prejudice, and defendant PAL International Hawaii, Ltd. filed a notice of no objection to GGS's motion. The circuit court granted GGS's Summary Judgment Motion and issued a decree of foreclosure in favor of GGS. N.Y. Diamond and Masuda were found jointly liable for all amounts due under the Note. In addition, all of N.Y. Diamond's interests under the Mortgage were foreclosed.

Only Masuda chose to appeal. Masuda has appealed insofar as the foreclosure order concludes that Masuda himself is personally liable for the amounts owed under the Note and is therefore personally liable for whatever deficiency remains after the sale of N.Y. Diamond's mortgaged properties.

## I.

"'On appeal, an order of summary judgment is reviewed under the same standard applied by the trial courts.'" *Pacific Int'l Serv. Corp. v. Hurip*, 76 Hawai'i 209, 213, 873 P.2d 88, 92 (1994) (quoting *Reyes v. Kuboyama*, 76 Hawai'i 137, 138, 870 P.2d 1281, 1282 (1994)). Consequently, summary judgment is proper where, viewing all evidence in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party clearly demonstrates that he or she is entitled to judgment as a matter of law. *State v. Tradewinds Elec. Serv. and Contracting, Inc.*, 80 Hawai'i 218, 222, 908 P.2d 1204, 1208 (1995); Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c). Masuda raises two questions on appeal.

## II.

### A.

First, Masuda asserts that the circuit court erred in granting GGS's Summary Judgment Motion because there was a genuine issue of material fact. In support of its Summary Judgment Motion, GGS relied on various documents attached to its original Complaint including: the original Mortgage (exhibit 1); a copy of the Unrecorded Agreement written in the Japanese language and executed on March 22, 1990 (exhibit 2); an "American" language translation of the Unrecorded Agreement (exhibit 3); the Mortgage Amendment (exhibit 4); the affidavit of Yutaka Sasaki (Sasaki); and the affidavit of translation of Gay Miyake (Miyake).

In relevant part, Sasaki's affidavit states that as "the loan officer for Plaintiff GGS," he was "familiar with the promissory note," and that Masuda, "by unrecorded instrument dated March 22, 1990 [the Unrecorded Agreement], assumed Mori's obligations under the Note and the [subject] Mortgage." Miyake's affidavit states that she is a translator and interpreter, and that she certified that "the American translation [attached to the complaint as exhibit 3] of the loan instrument is a true and correct translation of the

---

**1.** The Unrecorded Agreement amended the final payback date on the Note to April 1, 1991.

original [l]oan [i]nstrument [Unrecorded Agreement] written in Japanese [attached to the complaint as Exhibit 2]."

Masuda submitted his affidavit and the affidavit of Mitsunori Inoue (Inoue), a translator, in opposition to the Summary Judgment Motion. In his affidavit, made as "the President of [NY Diamond]" and in his "individual capacity," Masuda verifies the authenticity of various documents relating to third-party offers to purchase two of the mortgaged properties. The import of Masuda's affidavit is that GGS's refusal to grant partial releases of N.Y. Diamond's liability on the Note prevented the private sale of the mortgaged properties to satisfy N.Y. Diamond's obligations on the Note. Consequently, Masuda's affidavit does not concern his assumption liability but supports N.Y. Diamond's and Masuda's request for a private sale of the mortgaged properties and a delay in the foreclosure. Thus, Masuda's affidavit is only tangential to our consideration of the Summary Judgment Motion.

Unlike Masuda's affidavit, Inoue's affidavit is central to our consideration of the Summary Judgment Motion. Masuda argues that Inoue's affidavit raises a genuine issue of material fact because Inoue maintains that the Unrecorded Agreement does not state that Masuda assumed Mori's obligations under the Note. Masuda asserts that the Inoue translation is diametrically opposed to that proffered by GGS.

Specifically, the Inoue affidavit asserts:

5. The Unrecorded Agreement does not state that Masuda assumed Takanobu Mori's obligations under the promissory note referred to in the Sasaki Affidavit....

6. The Unrecorded Agreement does not state that Masuda assumed Takanobu Mori's obligations under the mortgage referred to in the Sasaki Affidavit....

7. The Unrecorded Agreement does not state Masuda promised to pay the principal amount of the Note.

8. The Unrecorded Agreement is actually a Limited Power of Attorney or Proxy (regarding a Monetary Loan) that was entered into by Masuda and GGS Kabushikigaisha....

9. The Unrecorded Agreement appoints Toshio Iida on behalf of GGS and Shizuo Shibuya on behalf of Masuda, to enter into further negotiations and execute documents evidencing a loan similar in terms to those contained in the Note.

The Inoue affidavit is significant because it states that the Unrecorded Agreement is only a limited power of attorney entered into by Masuda. In contrast, the Sasaki affidavit states that the Unrecorded Agreement is an assumption by Masuda of Mori's obligations under the Note.

B.

■ The Unrecorded Agreement is not in a form which can be understood without extrinsic aids.[2] Usually, summary judgment is inappropriate if any ambiguity exists regard-

---

**2.** The Unrecorded Agreement is entitled "Proxy (Monetary Loan)" and is dated March 22, 1990. The English language translation of the document by Gay Miyake states in part as follows:

| | | |
|---|---|---|
| Address: | 2 Chome 20–15 Shinbashi, Minato-ku, Tokyo-to | |
| Creditor: | GGS Kabushikigaisha | |
| (Ko) | Representative Director: | Tsutomu Iwasaki |

| | | |
|---|---|---|
| Address: | 4–15–1 Tokiwadai, Itabashi-ku, Tokyo-to | |
| Debtor/Collateral Provider: | | Toshio Masuda |
| (Otsu) | | |

| | | |
|---|---|---|
| Address: | | |
| Joint Guarantor/Collateral Provider: | · | New York Diamond, Inc. |
| (Hei) | | <Signature, ?> |

| | |
|---|---|
| Address: | |
| Joint Guarantor: | |
| (Tei) | |

The creditor (Ko) appoints Toshio Iida, and the debtor (Otsu) and joint guarantor (Hei) and (Tei) appoint Shizuo Shibuya to be their agent respectively; the following items have been delegated.

ing the intent of the parties at the time of contract execution. *Hanagami v. China Airlines, Ltd.*, 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984) ("The intent of the parties is a question of fact, and '[i]nasmuch as the determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable [people] might differ, summary judgment often will be an inappropriate means of resolving an issue of that character.' ") (quoting *Bishop Trust Co. v. Central Union Church*, 3 Haw.App. 624, 628–29, 656 P.2d 1353, 1356 (1983) (citations omitted)).

The trial court apparently granted summary judgment on the basis that the Unrecorded Agreement did constitute an agreement by Masuda to assume Mori's debt.[3] We disagree that summary judgment on this basis was proper.

■ However, this court may affirm a grant of summary judgment on any ground appearing in the record, regardless of whether the circuit court relied on it. *Reyes v. Kuboyama*, 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994); *Waianae Model Neighborhood Area Ass'n v. City and County of Honolulu*, 55 Haw. 40, 43, 514 P.2d 861, 864 (1973); *McCarthy v. Yempuku*, 5 Haw.App. 45, 52, 678 P.2d 11, 16 (1984). In this case, Masuda admits that he signed the Mortgage Amendment in which he acknowledged that he had assumed Mori's obligation under the Note.

We hold, based on the record, that the doctrine of equitable estoppel was applicable, and the order granting summary judgment is sustainable on that ground.

### C.

#### 1.

The Mortgage Amendment states in relevant part as follows:

THIS AMENDMENT OF MORTGAGE AND CONSENT TO ASSUMPTION OF MORTGAGE is made this 14th day of November, 1990, by and between TOSHIO MASUDA, unmarried, ... referred to herein as "Masuda"; NEW YORK DIAMOND, INC., a Hawaii [Hawai'i] corporation ... referred to as "Mortgagor"; and GGS Co., LTD, a Japan corporation ... referred to herein as "Mortgagee".

*RECITALS:*

A. Mortgagor made and delivered to Mortgagee that certain Mortgage dated September 29, 1989 (the "Mortgage"), as accommodation security for that certain unrecorded Promissory Note dated September 29, 1989 (the "Note"), in the principal amount of ONE HUNDRED FOURTEEN MILLION JAPANESE YEN (JPY 114,000,000).

B. The Note was made and delivered by Takanobu Mori ("Mori["] ) to Mortgagee.

1. Preparation of attested document.
1. Acceptance of compulsory execution.
1. Closing of the monetary consumption loan contract, attached items and by-laws listed as follows:

| | |
|---|---|
| 1. Loan Amount: | 114,000,000 yen |
| 1. Creditor: | GGS Kabushikigaisha |
| 1. Debtor: | Toshio Masuda |
| 1. Joint Guarantor: <Signature, ?>, | New York Diamond, Inc. |
| 1. Loan Date: | March 22, 1990 |
| 1. Principal Amount Payback Date: (Final Payback Date) | April 1, 1991 |

1. Payback Method and Interest Payment Method (circle "i" or "ro")
"i" ("i" is circled)
Principal sum is to be paid lump sum payback date.
First round interest will be made on March 22, 1990 and the one month amount will be paid in advance on the ___ day of every subsequent month.
. . . . .

| | |
|---|---|
| 1. Interest: | 9.5% per annum |
| 1. Damages beyond term: | 19% per annum |
| 1. Collateral: | ———— |

---

**3.** In its Findings of Fact, the trial court merely states that "[i]n an unrecorded assumption agreement ('Assumption Agreement') dated March 22, 1990, Masuda assumed Mori's obligations under the Note ... (under which) ...

C. The Mortgage was recorded in the Bureau of Conveyances of the State of Hawaii [Hawai'i] in Liber 23733 at Page 758.

D. *By unrecorded instrument, Masuda assumed Mori's obligations under the Note.* [ (Emphasis added.) ]

E. On the terms and conditions provided below, Mortgagee wishes to consent to Masuda's assumption of the Note, and Mortgagor and Mortgagee wish to amend the Mortgage to reflect said assumption.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, *the parties have agreed* as follows: [ (Emphasis added.) ]

1. *CONSENT TO ASSUMPTION OF NOTE.* Mortgagee hereby consents to Masuda's assumption of Mori's obligations under the Note, . . . .

. . . .

3. *AMENDMENT OF MORTGAGE. Mortgagor and Mortgagee hereby agree that the reference on page one (1) of the Mortgage to "Takanobu Mori" as the maker of the Note is hereby deleted and "Toshio Masuda" is hereby substituted therefor.* [ (Emphasis added.) ]

. . . .

IN WITNESS WHEREOF, the parties have caused this instrument to be executed as of the day and year first above written.

[signature]
TOSHIO MASUDA
"Masuda"
[ (Emphasis added.) ]

NEW YORK DIAMOND, INC.

By [signature]

Name: TOSHIO MASUDA
Title: President

"Mortgagor"

GGS CO., LTD.

[signature]

Name: Masaharu Fuma
Title: Vice President
"Mortgagee"

Masuda promised to pay GGS the principal amount of the Note . . . plus . . . interest."

4. An integrated agreement is "[t]he writing or writings adopted by the parties to an agreement

Notably, the Mortgage Amendment's recitals state that Masuda assumed Mori's obligations under the Note in an "unrecorded instrument," the Unrecorded Agreement referred to previously. *See* discussion *supra.* Also, in the recitals, GGS expresses its agreement to amend the mortgage by substituting Masuda for Mori as the maker of the Note secured by the Mortgage. Masuda claims, however, that because "the only reference to the alleged assumption [by] Masuda of Mori's obligations under the Note is contained in the 'Recitals[,]' . . . [t]here is no promise or agreement by Masuda in the Amendment . . . to assume Mori's obligations under the Note."

2.

■ A recital is a "formal statement or setting forth of some matter of fact, in any deed or writing, in order to explain the reasons upon which the transaction is founded." *Black's Law Dictionary* 1270 (6th ed.1990). "A recital of fact in an integrated agreement[4] is *evidence* of the fact [recited], and its weight depends on the circumstances." *Restatement (Second) of Contracts* § 218 comment b (1979) (emphasis and footnote added). Moreover, "in some circumstances a recital may embody a representation of fact by one party to the other, and the party making such a representation may be barred by estoppel from showing the truth contrary to the representation after another has relied on the representation." *Restatement (Second) of Contracts* § 218 comment c (1979).

■ Under the facts of this case, the doctrine of equitable estoppel is applicable. "[T]he party invoking equitable estoppel must show that 'he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, *and* that such reliance was reasonable.' " *AIG Hawaii Ins. Co. v. Smith,* 78 Hawai'i 174, 179, 891 P.2d 261, 266, *reconsideration denied,* 78 Hawai'i

as the final and complete expression of [an] agreement." *Black's Law Dictionary* 809 (6th ed.1990).

421, 895 P.2d 172 (1995) (*quoting Doherty v. Hartford Ins. Group,* 58 Haw. 570, 573, 574 P.2d 132, 134–35 (1978) (citations omitted) (emphasis in original)). *Accord State v. Yamada and Sons, Inc.,* 59 Haw. 543, 547, 584 P.2d 114, 117 (1978); *Application of Mokuleia Ranch & Land Co.,* 59 Haw. 534, 542, 583 P.2d 991, 996 (1978); *Simpson v. Department of Land & Natural Resources,* 8 Haw. App. 16, 25, 791 P.2d 1267, 1273 (1990). The recitals state that Masuda assumed Mori's obligations in the Unrecorded Agreement. Based upon the recitals, GGS agreed that the Mortgage would be amended by substituting a new debtor—Masuda—for Mori, the original maker of the Note. Accordingly, under the Mortgage Amendment, GGS would look to Masuda for satisfaction of the Note. Plainly, then, GGS relied on the formal statement of Masuda's assumption of Mori's debt in agreeing to amend the Mortgage. Such reliance was reasonable, given the express representation in the assumption recital of the Mortgage Amendment which Masuda signed in his individual capacity. Default on payment of the Note followed.

The assumption recital explained the reason for GGS's agreement to accept a different maker in lieu of the original maker of the Note and to amend the Mortgage accordingly. Masuda signed the Mortgage Amendment in both his individual capacity as well as in his capacity as President of the mortgagor, N.Y. Diamond. Under these circumstances, Masuda would be estopped from later contesting the truth of the assumption recital upon which GGS had relied. *See Restatement (Second) of Contracts* § 90 comment a (1979) ("Estoppel prevents a person from showing the truth contrary to a representation of fact made by him after another has relied on the representation."). *See also Chambrella v. Rutledge,* 69 Haw. 271, 286, 740 P.2d 1008, 1016–17 (1987) (holding that on appeal, the defendant was estopped from denying plaintiffs' membership in his organization where defendant earlier had represented to members of plaintiffs' unions that they were members of his organization and where members of plaintiffs' unions paid funds to defendant in reliance on his representation); *John Wilson Enter., Ltd. v. Carrier Terminal Serv., Inc.,* 2 Haw.App. 128,

131, 627 P.2d 294, 295 (1981) (concluding that on appeal, the defendant was estopped from denying its agent's acceptance of an offer to buy a condominium after remaining silent for three months after the acceptance and where buyer opened escrow in reliance).

In his memorandum opposing GGS's Summary Judgment Motion, Masuda confirmed that he signed both the Unrecorded Agreement and the Mortgage Amendment. Masuda did not claim that he did not understand the Mortgage Amendment or that he mistakenly signed it. The assumption recital clearly evidences an intent to memorialize Masuda's assumption of Mori's obligations under the Note. *See In re Taxes, Aiea Dairy, Ltd.,* 46 Haw. 292, 306, 380 P.2d 156, 164 (1963) ("The subsequent actions of the parties in construing the contract cannot be ignored as evidencing the intent of the parties under the contract."). Under these circumstances, summary judgment in favor of GGS is supported by the doctrine of equitable estoppel.

### D.

▇ Masuda argues, for the first time on appeal, that the recital should have no effect because it is not clear that the "unrecorded instrument" referenced in the Mortgage Amendment is the Unrecorded Agreement signed on March 22, 1990.

Masuda never before questioned whether the "unrecorded instrument" referred to in the Mortgage Amendment was the Unrecorded Agreement. When GGS filed its Summary Judgment Motion, Sasaki's affidavit maintained that the "unrecorded instrument" referred to in the Mortgage Amendment was the Unrecorded Agreement executed on March 22, 1990. The burden then shifted to Masuda to present evidence raising an issue of material fact regarding the identity of the "unrecorded instrument." *GECC Fin. Corp. v. Jaffarian,* 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App.), *aff'd,* 80 Hawai'i 118, 905 P.2d 624 (1995) (stating that when a party moving for summary judgment satisfies its initial burden of production, the burden shifts to the non-moving party to respond to the

motion for summary judgment and to demonstrate specific facts, as opposed to general allegations, which present genuine issues worthy of trial).

Masuda, however, failed to present any evidence refuting the assertion that the unrecorded instrument referred to in the Mortgage Amendment was the Unrecorded Agreement. *See Costa v. Able Distrib., Inc.,* 3 Haw.App. 486, 488–89, 653 P.2d 101 (1982) (requiring non-moving party in a motion for summary judgment to point to facts which refute movant's proof in order to show genuine issue of material fact and prohibiting reliance on mere allegations of credibility).

Moreover, Masuda did not contest this fact in his pleadings or in oral argument at the Summary Judgment Motion hearing. In fact, in Masuda's memorandum in opposition to the summary judgment, Masuda admitted that the Unrecorded Agreement was the document referenced in the Mortgage Amendment. This admission was repeated by Masuda's counsel during oral argument.[5]

■ Consequently, until Masuda raised the issue in his reply brief on appeal, there was never any controversy, and therefore, no genuine issue of fact regarding the identity of the unrecorded instrument referenced in the Mortgage Amendment. Because we are in the same position as the trial court when reviewing a motion for summary judgment, we do not consider a new factual issue which was not part of the record and was not presented to the trial court. *See City &*

*County of Honolulu v. Toyama,* 61 Haw. 156, 158 n. 1, 598 P.2d 168, 171 n. 1 (1979) ("[F]or purposes of appellate review, [the] court cannot consider matters outside the record which could not have been considered by the trial court at the time its judgment was rendered.").[6] Furthermore, as we indicated above, the question of Masuda's liability on summary judgment is resolved under the estoppel doctrine, not on a construction of the Unrecorded Agreement.

### III.

■ Second, Masuda asserts that the circuit court erred because Mori should have been joined as an indispensable party pursuant to HRCP Rule 19(b).[7] The circuit court did not make an express finding as to whether or not Mori was an indispensable party. Consequently, we must assume that because summary judgment was granted, the circuit court did not find that Mori was an indispensable party. According to Masuda, Mori's presence in the proceedings below was necessary in order for GGS to establish Mori's original liability under the Note. If the Note was not binding on Mori because the debt was satisfied or otherwise extinguished, Masuda argues, then Masuda would have no obligation under the Note.

### A.

Initially, we reject Masuda's contention that GGS had the burden of proving Mori's

5. Counsel appeared on behalf of defendants Masuda and N.Y. Diamond at the September 28, 1992 hearing, and stated "[i]n the amendment of mortgage, you have various recitals, and they make reference to Masuda assuming Mori's obligation under the note, [the] unrecorded instrument. There's no reference to the date or anything else. I presume it's the March 22, 1990, agreement, which is really just a proxy."

6. Because we conclude that summary judgment was properly granted on the theory of estoppel, we do not find it necessary to address GGS's argument that Masuda's execution of the Mortgage Amendment was an admission by a party under Hawai'i Rules of Evidence Rule 803(a)(1) and was sufficient by itself to establish Masuda's assumption of those obligations.

7. Hawai'i Rules of Civil Procedure (HRCP) Rule 19(b) provides as follows:

**(b) Determination by Court Whenever Joinder Not Feasible.** If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

liability under the Note. In Sasaki's affidavit and GGS's exhibits in support of its Summary Judgment Motion, GGS presented prima facie evidence of Mori's obligation under the Note. Masuda failed to refute this point with any evidence of his own. In fact, Masuda acknowledged in both his memorandum in opposition to summary judgment and in his opening brief on appeal that Mori "executed and delivered" to GGS a promissory note in the amount of one hundred fourteen million Japanese yen. Masuda also acknowledged that as security for Mori's obligations under the Note, N.Y. Diamond agreed to act as an accommodation mortgagor and executed and delivered a mortgage to GGS on the five parcels of real estate. Finally, Masuda admitted in his memorandum in opposition to summary judgment that N.Y. Diamond "recognized its obligations under the Accommodation Mortgages" and requested GGS to consent to the private sales of a portion of the collateral property with "all net proceeds . . . to be applied to the obligations due under the Note."

It seems clear that Masuda never questioned the validity of Mori's original obligations under the Note nor had reason to believe that the obligations were satisfied or otherwise extinguished. More importantly, however, Masuda never refuted GGS's evidence that Mori was obligated under the Note and failed to pay it. *GECC Fin. Corp.*, 79 Hawai'i at 526, 904 P.2d at 540 (Acoba, J., concurring). "A party opposing summary judgment cannot rest on its pleadings if the moving party has satisfied its obligation of showing there is no genuine issue of material fact and it is entitled to a judgment as a matter of law." *Id.* at 525, 904 P.2d at 539.

### B.

▉ Our supreme court has stated, "The rule regarding indispensable parties is founded on equitable considerations and is not jurisdictional." *Midkiff v. Kobayashi*, 54 Haw. 299, 324, 507 P.2d 724, 739 (1973). HRCP Rule 19(b) instructs the court to determine "whether in equity and good conscience the action should proceed among the parties before it," or should be dismissed because an absent party is indispensable. HRCP Rule 19(b) lists four factors for the court to consider when determining whether a party is "indispensable":

> first, to what extent a judgment rendered in the person's absence might be prejudicial to [the person] or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

These four factors are in not in any way exclusive. Moreover, the rule does not state the weight each factor should be given. 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 1608, at 91 (2d ed. 1986) (*Federal Practice* ).[8] Rather, a court should consider all of the factors and employ a functional balancing approach. Because of the flexibility of the "equity and good conscience" test and the general nature of the factors listed in HRPP Rule 19(b), whether a particular non-party described in Rule 19(a) will be regarded as indispensable depends to a considerable degree on the circumstances of each case. *Federal Practice, supra*, at 90. *See also Thornley v. Sanchez*, 9 Haw.App. 606, 612, 857 P.2d 601, 605 (1993); *American Sec. Bank v. Nishihara*, 3 Haw.App. 594, 656 P.2d 1347 (1983).

Under the circumstances here, Mori was not an indispensable party.

With respect to the first factor, the judgment substituted Masuda's liability for Mori's prior obligation. Hence, Mori would not be open to liability and thus not prejudiced by the judgment. Masuda was not prejudiced by Mori's absence as a party. Masuda had

---

**8.** Because the language of HRCP Rule 19(b) is identical to Federal Rules of Civil Procedure Rule 19(b), we turn to sources interpreting the federal rule for guidance. *Cf. Compass Dev., Inc.* *v. Blevins*, 10 Haw.App. 388, 394, 876 P.2d 1335, 1336 (1994) (finding the U.S. Supreme Court's interpretation of the federal rule persuasive).

full opportunity to contest the Summary Judgment Motion below and would have had the opportunity to contest his liability if the matter had proceeded to trial. Any "material facts" or "defenses" that Mori might have raised against the Note would have been obtainable from Mori in his capacity as a witness for use by Masuda in Mori's affidavit, deposition, or testimony as part of Masuda's opposition to summary judgment (or at trial if the matter proceeded to trial), without making Mori a party.[9] Obviously, GGS was not prejudiced by Mori's absence.

The second factor is insignificant because, as we have pointed out, no demonstrable prejudice redounded to Mori or to "those already parties." HRCP Rule 19(b).

Clearly, the third factor is satisfied because GGS may be awarded complete legal relief against Masuda and N.Y. Diamond without joining Mori.

Finally, since we hold that Mori is not an indispensable party, the fourth factor, the adequacy of a remedy for GGS in the event of a nonjoinder, is not applicable, and thus not pertinent.

We hold, then, that Mori was not an indispensable party.

### IV.

For the foregoing reasons, the summary judgment filed on March 19, 1993 is affirmed.

---

**9.** If Masuda believed his liability to GGS could be shifted in whole or in part to Mori, he could have brought a third-party complaint against Mori as a third-party defendant under HRCP Rule 14. That rule states,

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him.

But Masuda did not seek leave to file a third-party complaint.